UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Maria Marquez, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-01847-C |
| | § | |
| Eldorado CW Investments, Ltd. | § | |
| d/b/a The Car Wash Zone, and | § | JURY DEMAND |
| ECWI, LLC, | § | |
| | § | |
| *Defendants*. | § | |

---

**APPENDIX IN SUPPORT OF PLAINTIFF MARIA MARQUEZ'S
RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

INDEX OF EXHIBITS

1 DECLARATION OF MARIA MARQUEZ…………………………………………………………  4

2 DECLARATION OF MIGUEL RODAS……………………………………………………………  24

3 EXCERPTS FROM DEPOSITION OF MARIA MARQUEZ………………………………  27

4 CERTIFIED TRANSLATION OF JORGE TREJO STATEMENT
SUBMITTED TO EEOC……………………………………………………………………………  103

5 CAR WASH ZONE'S FIRST AMENDED OBJECTIONS
AND ANSWERS TO INTERROGATORIES…………………………………………………  107

6 DECLARATION OF AMY GIBSON …………………………………………………………..  114

Appendix 001

Respectfully submitted,

*/s/ Amy Gibson*

_____

Ms. Amy E. Gibson
Texas Bar No. 00793801
amy@gwfirm.com

Mr. David L. Wiley
Texas Bar No. 24029901
david@gwfirm.com

Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, Texas 75201-4923
T: (214) 522-2121
F: (214) 522-2126

Mr. Christopher Willett
Texas Bar No. 24061895
cwillett@equaljusticecenter.org

Ms. Caitlin Boehne
Texas Bar No. 24075815
cboehne@equaljusticecenter.org

Equal Justice Center
314 East Highland Mall Boulevard,
Suite 401
Austin, Texas 78752
T: (512) 474-0007
F: (512) 474-0008

*Attorneys for Maria Marquez*

### CERTIFICATE OF SERVICE

The undersigned certifies that, on October 31, 2022, she filed the foregoing *Appendix in Support of Plaintiff Maria Marquez's Response to Defendants' Motion for Summary Judgment* with the United States District Court for the Northern District of Texas through the CM/ECF system, such that Defendants should be served with a copy of the filed document as follows:

**VIA CM/ECF SYSTEM**
Mr. Ryan K. McComber
ryan.mccomber@figdav.com
Mr. John H. Yoon
john.yoon@figdav.com

Figari + Davenport , LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
T: (214) 939-2000
F: (214) 939-2090

*Attorneys for Defendants*

*/s/ Amy Gibson*

_____
Amy E. Gibson

Appendix 003

# Exhibit 1

# Declaration of
# Maria Marquez

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Maria Marquez, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-01847-C |
| | § | |
| Eldorado CW Investments, Ltd. | § | |
| d/b/a The Car Wash Zone, and | § | JURY DEMAND |
| ECWI, LLC, | § | |
| | § | |
| *Defendants*. | § | |

---

**DECLARATION OF MARIA MARQUEZ**

---

1.      My name is Maria Noris Marquez. The facts and statements that I make in this declaration are true and accurate to the best of my recollection. Unless otherwise stated or apparent from my testimony, I have personal knowledge of the facts and statements that I make in this declaration. I was informed that "personal knowledge" means that I personally witnessed or experienced something using one or more of my senses, like sight, hearing, smell, or touch. I was also informed that "personal knowledge" includes how I feel.

2.      When I talk about accurate copies of photos or images in this declaration, I am talking about the photos or images without these things that an attorney might add: (1) letters and numbers at the bottom — what I am told are called "bates-labels," (2) redactions, (3) highlighting, and (4) blue boxes around the photos or images. Unless otherwise stated or apparent from my testimony, any bates-labels, redactions, highlighting, or blue boxes were not part of the originals.

3.      One of my attorneys added the captions and typeface in this declaration. The captions are not part of my testimony.

## Basics: car wash work location, age, sex, current field of work

4.     When I say *Car Wash Zone*, I mean The Car Wash Zone located at 6501 Eldorado Parkway in McKinney, Texas. I was 32 years old when I worked at Car Wash Zone. My birthdate is May 27, 1986. I am female and have always been female. I am currently 36 years old and work as an apprentice electrician under the guidance of someone with a higher license — a Journeyman Electrician License — mostly on commercial construction projects.

## Carmel Car Wash: Jorge Trejo's sexual harassment

5.     Right before working at Car Wash Zone, I work at the Carmel Car Wash location at Lemmon Avenue in Dallas, Texas. Jose Palacios, Jorge Trejo, and other people are working there at the same time I am.

6.     While working at Carmel Car Wash, Jorge Trejo starts to sexually harass me with his gaze — his facial expressions show sexual desire in a way that grosses me out and scares me. For example, he licks his lips and then bites his bottom inner lip in a sexual way with his eyes fixated only on me. The look in his eyes and the way he smiles at me also show he is depraved and has sexual desire. His facial expressions directed at me are not friendly, joking, loving, or kind. His facial expressions directed at me are depraved, sexual, and scary.

7.     While working at Carmel Car Wash, Jorge Trejo also asks me to go out with him. I am in the office waiting for Jose Palacios to put me to work, and I end up left alone in the office with Jorge. While we are alone, Jorge takes out a necklace that he has under his shirt. He shows me his necklace and tells me he will give me a much thicker necklace than this one and a bracelet much thicker than this one if I will go out with him, give him a chance. I tell him no, I will not go out with him, and do not disrespect me.

## Car Wash Zone: hiring me away from Carmel Car Wash

8.     Sometime after that at Carmel Car Wash, Jose Palacios shows up while I am washing things like towels. He lets me know he is there to say goodbye, he will no longer work there, and he will start on Monday at another car wash in McKinney, Texas. He says he will start it — the car wash — from the bottom, it is starting up and does not have many clients yet. He asks if I want to work with him to get the car wash up and running. He says that at first there will not be many tips for me, so he will pay me $2 more per hour than I am currently earning. He says I will ultimately have more opportunities for tips since the car wash is located in a wealthy area.

Appendix 006

9.    I accept mainly because I can get away from Jorge Trejo and his harassment. That is not the only reason, but it is the main reason. In leaving Carmel Car Wash and going to work with Jose, I feel relief that Jorge Trejo's sexual harassment is not going to keep happening.

## Car Wash Zone: my job position, initial employment

10.    In late August 2018, I start work as an employee of Car Wash Zone. At the time, some employees are already working there. The job Car Wash Zone hires me to do is detailing cars. For example, I clean the carpets, seats, interior plastic, and sometimes dry and clean on the outside including the tires. The detailing work depends on what the customer wants, like whether the customer wants extra detailing work.

11.    Everything starts well at the new job. On day one, Jose Palacios tells me he wants to pick this place up and do good work here. He thanks me for coming out to work with him. At some point, he had told me he tried to recruit others to come over with him — to this car wash in McKinney, Texas — but no one had accepted until me. He asks me to find others who might want to work there. I find Iris Argueta, who comes to work there. Over time after I start, more workers come.

## Car Wash Zone: nature of business, tips, male-centric culture

12.    During the time I work there, Car Wash Zone is a carwash business. Customers come to wash cars. One part of the business has an automatic drive-through carwash tunnel. The other part of the business provides car detailing services. Business really depends on what the customers want, like extra carwash features or extra detailing work.

13.    During the time I work at Car Wash Zone, customers often tip me for detail work. The tips provide better stability than a job with comparable hourly rates but no tips. My hourly rate is $12 per hour. So, even a small tip makes an important difference to employees like me who detail the cars.

14.    During the time I work at Car Wash Zone, Jose Palacios is our general manager, and no manager is female. He has all the employees, including me, do extra things like cut the trees, cut the yard, and clean up the parking lot. But he only has the women clean the bathrooms, clean the office, clean the wash rags and towels, and fill up bottles with the liquids used on the cars. If he ever assigns these cleaning tasks to a man, I do not recall it. From what I see and experience, these kinds of cleaning tasks are for the women only.

Appendix 007

### Car Wash Zone: Spanish-speaking employees

15.     This paragraph covers the whole time I work at Car Wash Zone. It is based on what I see and experience. Car Wash Zone employees speak Spanish. For example, our general manager talks to the employees in Spanish. No one who works there speaks English, other than small things like saying *good morning* to a customer in English. I cannot speak English, other than small things like saying *thank you* to a customer in English. I cannot read English but am able to recognize things like the logo for Car Wash Zone. I am fluent in Spanish for speaking, hearing, reading, and writing.

### Car Wash Zone: employees not provided or told of sexual harassment policy

16.     This paragraph covers the whole time I work at Car Wash Zone. It is based on what I see and experience. I never receive, see, or hear about any sexual harassment policy or sexual harassment poster. I never receive, see, or hear about any employee handbook or manual. I do not know that any sexual harassment policy, sexual harassment poster, employee handbook, or employees manual exists. I never see or hear about any other employee being provided or told about any sexual harassment policy, sexual harassment poster, employee handbook, or employee manual.

### Car Wash Zone: no sexual harassment training

17.     This paragraph covers the whole time I work at Car Wash Zone. It is based on what I see and experience. There is no sexual harassment training provided to me or the other employees. I never attend, see, or hear about any meeting of any type to train or teach employees about sexual harassment.

18.     I currently work as an apprentice electrician, mostly on commercial construction projects. In this work that was *after* Car Wash Zone, I receive some training on sexual harassment around the time of hire. Also, a general construction company — the one that hires smaller companies to do electric, painting, etc. — has *many* meetings and trainings on sexual harassment. These meetings and trainings on sexual harassment cover things like: what it is, that it is not allowed at this company, why it is unacceptable, how to prevent it, what to do if you see it, where to report it, and things like that. I attend those meetings and trainings as an employee of the electrical contractor that the general construction company hired. Car Wash Zone had nothing like any of that.

### Car Wash Zone: onsite cameras and monitors

19.     During the time I work there, Car Wash Zone has a lot of cameras on the property. I see that. Because I clean the office, I also see the office has two computer screens that show images from the cameras. There is a third computer for work. I see that the camera images are real-time — recording what is happening in the moment. Here are some examples of where the cameras are: in front of the office, inside the office, in front of the automatic drive-through carwash tunnel, in the middle of that tunnel, at the exit of that tunnel, the areas where customers pay, the room where we eat, the car detailing area, the area where clients vacuum their cars, the client waiting room, and the washing area where bottles of cleaning liquids are replenished.

### Car Wash Zone: Jorge Trejo starts work

20.     Not long after I start work at Car Wash Zone, Jorge Trejo and his stepdaughter Raquel start work there. I see that Jorge's job at the time involves acting as cashier taking pay from customers and directing customers entering the automatic carwash tunnel.

### Car Wash Zone: Jorge Trejo, workplace sex talk

21.     During the workday at Car Wash Zone, Jorge Trejo openly discusses vulgar things — sex and how he personally positions women during sex — within hearing of me and other employees. This happens more than once while he is still doing cashier work. Here is one example. He talks about sexual positions and describes an airplane position, a helicopter position, and a tiger position. He says he lifted a woman with her legs open and let her fall on top of his straight penis just like the *capirucho* plays. A *capirucho* is a children's toy. The objective in play is to toss the top part up and have it land on the stick that is attached with a string to the top part. Here is a sample picture I found on the internet of the children's toy *capirucho*:



Appendix 009

I am trying to focus on work and trying to ignore the sex conversation. But I cannot help but hear some of this. He is talking about things I have never heard of. I am so uncomfortable. This seems dirty to me.

## Car Wash Zone: Jorge Trejo, initial sexual harassment

22.     Shortly after he starts work at Car Wash Zone, Jorge Trejo starts to sexually harass me. He tries to find me alone and tries to hug me when he gets a chance, though he is not successful. Here are some examples. He tries to hug me in the breakroom where we are eating, and I tell him directly, do not do that, I do not want you touching me. I leave the breakroom to get away from him. He tries to hug me when I am cleaning in the automatic carwash tunnel, and I tell him to stop, and I run out of the carwash tunnel to get away from him. He gets close enough to place his hands on my shoulders, but I push him off while he insists that I give him a hug. This is persistent — him stalking me around the workplace and trying to hug me.

23.     I know there are friendly hugs. But Jorge Trejo is not trying for a friendly hug. He is not trying for a hug that is friendly, joking, loving, or kind. Knowing him — seeing his conduct toward me that was depraved, sexual, and scary starting at Carmel Car Wash, hearing him talk about sexual positions, and knowing that he offered me jewelry and money to go out with him — I realize he just wants to touch and feel my body in a sexual way, an intimate way.

24.     I try to handle this to make it stop. Here are some examples. I try to avoid him. I always reject his advances. I push his arms away. I tell him not to touch me, he should not be touching me. I try to stand behind Raquel.

25.     He also offers to give me money in exchange for going out with him. He says if I am with him, I will not have these problems, I will have money. He lets me know if I go out with him, I will not have any need for money anymore. I tell him no.

26.     He also continues to gaze at me in a way that shows sexual desire. He continues to lick his lips and then bite his bottom inner lip in a sexual way with his eyes fixated only on me. The look in his eyes and the way he smiles at me also continue to show he is depraved and has sexual desire. He also stares at my buttocks and vaginal area. I try to wear loose bottoms, but he does not stop. He makes me feel exposed even though I am fully clothed. His facial expressions directed at me are not friendly, joking, loving, or kind. His facial expressions directed at me continue to be depraved, sexual, and scary.

**Car Wash Zone: Jorge Trejo as heavy, gang member, dangerous**

27.     During the time I work at Car Wash Zone, I see that Jorge Trejo has a lot of tattoos and is heavier than me. He is not that tall, but he is thick with a very large stomach — *gordo* in Spanish. I am about 5 feet, 4 inches tall. I currently weigh about 165 pounds, but I weigh less during the time I work at Car Wash Zone.

28.     For comparison, here are pictures of Jorge Trejo and pictures of me. The pictures of him approximate what he looks like when I work at Car Wash Zone. I recognize the pictures of him from his Facebook profile page. I am not Facebook friends with Jorge Trejo. I have never been Facebook friends with him. To verify that these pictures are on his Facebook profile page, I recently logged into Facebook, went to his Facebook profile, recognized his name and what he looks like, and viewed these pictures, and others, in his Facebook timeline or photos. The pictures of me are on the next page and are both dated February 28, 2018. I understand all the pictures are cropped. But what they show is accurate.



Appendix 011



29.     During the time I work at Car Wash Zone, Raquel and I often work together in car detail. Raquel tells me that Jorge Trejo is her stepfather and she lives in the same home as him. She says he convinced her mother to marry him even though he and her mother are cousins. Raquel tells me in confidence that he was once part of a gang in El Salvador and emphasizes that he was one of the bad ones, one of the dangerous ones, within the gang. She says he is a very dangerous person.

30.     When Raquel tells me these things about her stepfather Jorge Trejo, I notice that she is scared of him. She is sad with teary eyes. She also *tells* me she fears him because he was a gang member in El Salvador and because he mistreats her even though they are family. But she says she is reliant on him because he pays the rent.

31.     Raquel tells me about these things during work while I am still working at Car Wash Zone. I do not recall if she tells me about these things before or after Car Wash Zone promotes Jorge Trejo to supervise us.

32.     I recognize the pictures on the next page from Jorge Trejo's Facebook profile page, though I cannot read the English above the pictures. I am not Facebook friends with Jorge Trejo. I have never been Facebook friends with him. To verify that these pictures are on his Facebook profile page, I recently logged into Facebook, went to his Facebook profile, recognized his name and what he looks like, and viewed these pictures, and others, in his Facebook timeline or photos.



These pictures match Jorge Trejo's personality — the way he acted and came across to me while I worked at Car Wash Zone. But I did not see these pictures while I worked at Car Wash Zone. These pictures are open to anyone who can log into Facebook.

Appendix 013

## Car Wash Zone: Jorge Trejo's promotion to manager, fill-in for general manager

33.   In early October 2018, our general manager Jose Palacios introduces Jorge Trejo to employees as the line and detail manager to oversee car detail employees. "Line" management is accommodating the cars — telling customers where they can park for detailing.

34.   At the same time, general manager Jose Palacios also lets us know Jorge Trejo is training to take over as general manager of Car Wash Zone. Jose explains that he plans to open another car wash location and wants to open as many car wash locations as he can for the company. Jose tells us he will be gone more often because he will be out looking for good places for future locations of Car Wash Zone. Around this time and after, Jose is gone more often. When Jose is gone, he leaves Jorge Trejo in charge. So practically speaking, Jorge Trejo is the general manager when Jose is gone.

## Car Wash Zone: Jorge Trejo as manager, escalating sexual harassment

35.   Once Jorge Trejo is manager over the car detail employees at Car Wash Zone, the sexual harassment gets worse. Now, he is regularly in my work area because this is his area to supervise. He sees me more often. He has more opportunities to sexually harass me. And he takes advantage of those opportunities. He sexually harasses me more often. And now, he has power over me as supervisor. He also continues the practice of sending only the women to clean the bathrooms, the office, the wash rags and towels. But he does this more often — sends the women to clean more often.

36.   As manager over the car detail part of the business where I work, Jorge Trejo tries to hug me more often. He tries this from in front of me. He tries this from behind me. He is not successful. I continue to reject his advances and get away from him. But it is really scary when he approaches me silently from behind so that I cannot tell he is coming. As if he wants to ambush me. I am frightened and anxious over him sneaking up behind me. My brain and body are on persistent alert about him coming up behind me or doing something that I am not expecting.

37.   Again, I know there are friendly hugs. But again, Jorge Trejo is not trying for a friendly hug. He is not trying for a hug that is friendly, joking, loving, or kind. Knowing him — seeing his conduct toward me that was depraved, sexual, and scary starting at Carmel Car Wash and continuing at Car Wash Zone, hearing him talk about sexual positions, and knowing that he offered me jewelry and money to go out with him — I know he just wants to touch and feel my body in a sexual way, an intimate way.

Appendix 014

38.     As manager over the car detail part of the business where I work, Jorge Trejo more often gazes at me in a way that shows sexual desire. He continues to lick his lips and then bite his bottom inner lip in a sexual way with his eyes fixated only on me. The look in his eyes and the way he smiles at me also continue to show he is depraved and has sexual desire. He also stares more often at my buttocks and vaginal area. Again, I try to wear loose bottoms, but he does not care. Again, he makes me feel exposed even though I am fully clothed. His facial expressions directed at me are not friendly, joking, loving, or kind. His facial expressions directed at me continue to be depraved, sexual, and scary.

39.     I again try to handle this. Here are some examples. Sometimes I sense his presence behind me and so am able to get away. Sometimes I see him coming and am able to get away. Sometimes Raquel warns me when he tries to get in my space, so I am able to get away. Sometimes I try to hide behind Raquel. Other times I push him off or tell him things like I do not want to give you a hug, or get away from me, or do not touch me. I always reject his advances.

40.     Jorge Trejo then escalates the sexual harassment. He twice tries to bring my attention to his erect penis while making a sexual comment. This is what happens. It is a busy day. I am bending down vacuuming a small car in the detail area. Raquel is also helping to clean this car, but she is working toward the front of the car.

41.     This time, I do not sense Jorge Trejo behind me or hear him approach from behind. There is vacuum noise and I am bending down. But then I hear him say my name and say something like, *mire como me tienes — look at how you have me*. I stop vacuuming, stand up, and turn around to look at him. I see he is close to me and displaying his erect penis beneath his clothes. He is wearing loose bottoms with a thinner fabric, so his erection is very visible to me.

42.     Then Jorge Trejo tries to make his erect penis even more visible to me. He glares his eyes down toward his erection, pushes his pelvis forward to show his erection even more through the thinner material, and says something similar, like *mire como me pones — look how you put me*.

43.     I raise my voice and tell him to get away, get out of here, leave me alone. I run toward Raquel. I tell Raquel something like, look how he is, look how he looks. I ask Raquel to do something. Raquel tells him something like, leave her alone, go away. Jorge is smiling in a psychotic sort of way. He appears humored that he makes me so anxious and upset and that he makes me scramble to get away from him.

44.     This happens about a week before my last day working at Car Wash Zone. I do not recall Jorge Trejo's exact words each time he tries to direct my attention to his erection or which sexual comment comes first. But each time he says something similar to *mire como me tienes* or *mire como me pones*. This incident happens once on one day but involves Jorge Trejo twice directing me to his erection while making a sexual comment to me. I understand there is some confusion or miscommunication over how many times Jorge Trejo tries to direct my attention to his erect penis. I want to be clear: this incident happens once on one day but involves Jorge Trejo twice directing me to his erection while making a sexual comment to me.

**Car Wash Zone: sexual harassment frequency, effect on work environment**

45.     By the end of the time I work at Car Wash Zone, there are about seven employees who work there, not counting Jose Palacios or Jorge Trejo. Most are male employees. From what I see and observe during my employment at Car Wash Zone, Jorge Trejo never treats any of the men the way he treats me in the ways I have described.

46.     Once Jorge Trejo starts sexually harassing me at Car Wash Zone, I suffer some form of sexual harassment from him almost every day, up to a few times a day. The sexual harassment is frequent and happens over a short time of less than two months. It gets worse and escalates after Car Wash Zone announces Jorge Trejo as the manager over car detailing and the person who will be the next general manager.

47.     The sexual harassment is disgusting. Jorge Trejo acts like a sexually depraved psychopath toward me. The sexual harassment prevents me from working in peace to focus on my job. When I am trying to escape from Jorge Trejo's sexual advances, get away from him, I cannot do my job at the same time. The sexual harassment causes me fear and anxiety at work. A lot of the work I do involves bending over and picking things up. I can feel his depraved looks at me, especially my body. I can feel that he only directs his sexual, depraved gazes at me. He stalks me and tries to silently approach me from behind. This is all scary due to everything I know and have heard about him, such as the way he has treated me, his talk about sexual positions, his prior gang membership, him being one of the dangerous ones in the gang, his stepdaughters fear of him.

48.     My brain and body are on persistent high alert for him sneaking up behind me, sneaking up on me. That state of alert is exhausting and distracts me from focusing on work. I end up focusing on whether he is sneaking up on me, where he is, what he is doing, instead of being 100% focused on performance. After the incident when he displays his erect penis and lets me know that just my presence is responsible for his erection, I have even more trouble focusing on my performance at work.

**Car Wash Zone: retaliation that is also continued harassment based on sex**

49.     Jorge Trejo is never able to reach his objective with his sexual advances toward me. Shortly after the erection incident, he starts to treat me with such a hatred. He starts to punish me over his rejected sexual advances toward me. The Spanish phrase for this punishment, this retaliation, is *acoso laboral* — employment harassment. He also starts to treat Raquel, who stood up for me, worse than before. But most of his hatred is directed at me. Everything is personal for him with me now. The way he looks at me now shows a look full of anger, like he is not mentally well, like someone who could be abusive.

50.     And Jorge Trejo does become more abusive and aggressive — a disgusting despot when it comes to how he treats me and Raquel. Here are some examples. He yells more aggressively at us when he tells us to do something, instead of respectfully telling us to do something. He denies us even short breaks of about 5 minutes.

51.     During the time I work there, Car Wash Zone has a special machine to clean car seats and carpets. This machine shoots water, cleans, and vacuums at the same time. Car Wash Zone has two of these machines. They are different from the long blue vacuum cleaner hoses that look like this at Car Wash Zone, except I circled the hoses:



52.     One day while Jorge Trejo is our supervisor and after the day he shows me his erection while making sexual comments, the special machines for cleaning car seats and carpets are not working. One is not working at all. The other is not working properly — it is shooting water but not vacuuming and so not cleaning anything. It is useless. So, Iris and I are using the long blue vacuum cleaner hoses to detail a car, with each of us on opposite sides of the car. Jorge Trejo comes over and starts yelling not to use those vacuums, to use the special machine. He is yelling about both of us but directing his yelling more to me. I say he wants us to clean the cars well and we cannot use the special machine because it is not working. He yells at me to use the special machine. This makes the work more difficult.

53.     Not long after that, I am detailing cars. A truck pulls in for detail work, and I am about to start working on it. Jorge Trejo orders me to go clean the office — again. The office has already been cleaned earlier that day. I ask him to let me clean the truck first and earn the tip and then go clean the office again. He tells me to go clean the office now. I repeat my request. He tells me to go punch out on the computer and go home. I let him know I want to keep working. He lets me know if I choose to stay and work anyway, he will punch me out — clock me out — so I will not get paid for my work the rest of the day. I follow his order and go home early. This is around midday, so I will lose any tip on the truck and all pay and tips for the rest of the day.

**Car Wash Zone: report of sexual harassment, reasons for not reporting earlier**

54.     This is the last straw for me — Jorge Trejo retaliating against me over rejection of his sexual advances, with acts that reduce my pay. Jose Palacios is not at Car Wash Zone that day. So I call Jose Palacios to report what is happening. He does not answer his phone. So I text him. He tells me to meet him the next day to discuss.

55.     The next day is October 21, 2018. I meet with Jose Palacios. The discussion starts with what happened the day before. The discussion then gets into the history of sexual harassment starting at Carmel Car Wash, me leaving Carmel Car Wash to get away from the sexual harassment, and the continuing sexual harassment at Car Wash Zone, escalating to Jorge Trejo approaching me with an erect penis and saying things like *mire como me tienes* or *mire como me pones*. I am explaining why Jorge Trejo deprived me of tips, sent me to clean the office again, and sent me home early. I am explaining that Jorge Trejo treated me that way because I rejected his sexual advances.

56.     One thing I regret is not recording that conversation with Jose Palacios. Because Jose laughs in my face. It is humiliating to have to tell him about my supervisor's erect penis and sexual comments to me. And when I tell Jose about that, he laughs at me. He mocks me. He does not take this seriously. He does not treat the sexual harassment with any importance.

57.     During this discussion, Jose Palacios does not support me, does not tell me that they will keep me safe, and instead supports the harasser whose actions are one step away from rape. Jose lets me know he is not going to do anything about the sexual harassment. He is not going to do anything to solve the issue. He says he will not fire Jorge Trejo. He says he will talk to Jorge but that Jorge will continue to be in his manager position and I will continue to have to work under Jorge and take orders from Jorge. He says if I want to keep working at Car Wash Zone, it will have to be under Jorge's orders, and if I do not like that, then I am free to leave.

Appendix 018

58.    In this moment, I realize some of my fears have come true — no one believing me, no one taking me seriously, possibly losing my job. I think to myself, this is why I did not do this earlier. I believe what Jose Palacios tells me — that Car Wash Zone is not going to do anything about the sexual harassment, Jorge will continue to be in his manager position, and I will continue to have to work under Jorge and take orders from Jorge. I believe Jose Palacios when he says if I want to keep working at Car Wash Zone, it will have to be under Jorge's orders and, if I do not like that, I can leave.

59.    I do not report earlier because I am scared. I fear no one will believe me. I fear no one will take me seriously. I fear possibly losing my job, my only income source. Those are not the only fears I had about reporting earlier, but those fears end up coming true. In the early part of the sexual harassment, I try to handle this on my own and hope the conduct will stop. Once Jorge Trejo becomes my supervisor, he is above me, and I am afraid of re-taliation. I want to keep my job. I am also afraid of him for all the reasons I have already talked about. After the erection incident, he does start to retaliate in ways that cut my pay and put my job at risk. That is the last straw that causes me to report.

60.    After I pursue a case against Car Wash Zone, I learn that Car Wash Zone claims it investigated and sides with Jorge Trejo, basically saying I am a liar, saying my claim has no merit, and taking no action. When I report the sexual harassment at Car Wash Zone, Jose Palacios does not say he will investigate. He does not say anyone will investigate. He does not ask me for evidence of the sexual harassment. He does not ask me to stay. He does not ask me to stay on staff and give him the opportunity to investigate. Again, he does not say any investigation will happen. What he tells me at the time shows the opposite.

**Car Wash Zone: Maria feels compelled to resign; no new job lined up**

61.    Since Jose Palacios makes it clear that Car Wash Zone is not going to do anything about the sexual harassment — I can continue to work under the harasser's orders or leave —, it is time to leave the workplace. Jose's reaction to my report of sexual harassment tells me it is not okay to be in a workplace like this.

62.    I learn the hard way that sometimes people only care about money, instead of the wellbeing of workers, especially women. The reaction to my report of sexual harassment is a humiliating betrayal, a disillusionment. I attempt to stop my supervisor's sexual harass-ment, and no one assists. Car Wash Zone obligates me to keep working under Jorge Trejo's orders if I want to keep working there.

63.    I am scared for my life. I cannot continue being in a workplace so dangerous. The whole situation makes me feel unsafe. I have nightmares to this day. Car Wash Zone is not going to do anything about the sexual harassment. And Jose Palacios is going to *tell* Jorge Trejo that I have reported his sexual harassment. Car Wash Zone gives Jorge Trejo so much authority and power, and he abuses the workers and sexually harasses me, and I am scared for my life. What Jorge Trejo has done already — approaching me with his erection and making sexual comments to me — is one step away from rape.

64.    Jorge Trejo also appears to me to be a person who is scary, dangerous, not nice, not trustworthy, and very abusive. I fear him for lots of reasons: his size, his history as a bad one and a dangerous one in a gang from El Salvador, how much even his own stepdaughter fears him, his conduct toward me that is like a sexually depraved psychopath, his abuse of his manager position, his attempts to silently approach me from behind, his approaching me with an erection while commenting that is what seeing me does to him.

65.    Also, at this time of year in October, it is getting dark outside earlier. I sometimes have to work at Car Wash Zone until around 8 p.m. There are areas like the trash area where Jorge Trejo can get me alone while taking out the trash in the evening. He was angry before, and no telling how angry he will be when he learns I have reported his sexual harassment. The situation forces me to resign. I do not want to leave the company but feel I must leave to protect my health and my life. I am not going to wait for Jorge Trejo to escalate things more. I am not going to stay and have him abuse me more. I am not going to wait for him to rape me.

66.    At the time, I do not have another job and do not have another job lined up. I have to search for employment, calling, contacting people. I eventually find a new job through a former coworker — a temporary construction cleanup job that will only last a short time. That is my first job after Car Wash Zone.

### Examples of non-pecuniary harm

67.    I feel violated as a worker. I feel violated sexually. I feel helpless — after I report sexual harassment, Jose Palacios tells me nothing will happen, tells me If I do not want to work under Jorge Trejo's orders, I can just leave. I feel humiliated. I feel betrayed. I feel disillusioned. I feel beyond sad. I fear for my life. The victim should not be the one who has to leave the workplace to be safe.

68.     It all happens close together and seems all at once to me — sexual harassment that escalates to approaching me with an erection and one step away from rape, retaliation toward me with such a hatred, having no support from Car Wash Zone, seeing that Jose Palacios only cares about making money, having no support from Jose Palacios, losing the job at Car Wash Zone, fearing for my health and my life.

69.     In some ways, what hurts the most is the betrayal, the disillusionment. I support Jose Palacios in getting Car Wash Zone up and running before anyone else comes over. I work hard. I trust Jose Palacios. That trust is broken. I feel such sadness that my heart just feels broken. This is a picture I drew of how that feels:



What happened at Car Wash Zone causes me to cry a lot for a while. I do not let them see me cry at work. But whenever I think about it back then, I cry. Sometimes I cry in the day.

Sometimes I cry in the night. I go out for walks and take deep breaths to help stop the tears and try to improve emotionally.

70.     The betrayal and lack of support from Car Wash Zone, plus the fear of Jorge Trejo, quickly causes sleeplessness. I do not get enough sleep, and it feels like I cannot sleep at all. Not long after the sleeplessness starts, the nightmares start. These nightmares are about a man chasing me with a machete or with a gun, and I fall in a deep end, and things like that. It feels like the man is about to slash me with the machete, someone is trying to slash me, running in fields chasing after me. Sometimes in these nightmares I am going into an abyss and falling into the abyss. I did not have these nightmares before the betrayal and fear for my life [from Jorge Trejo] at the end of my employment with Car Wash Zone.

71.     Shortly after these nightmares start, sleepwalking starts. I wake up standing up. I am confused because this — sleepwalking — has never happened before in my life. For example, I remember waking up to find I am standing with my cars keys in my hands. I look at the clock and it is early in the morning around 3 a.m. In my nightmare that night, I have to get away and have to look for my keys and am looking through my home for the keys in my nightmare. Once I wake up with keys in my hands, I think *what is happening to me? Why am I doing this?* Since this has been happening, I feel like I am not normal. This has never happened before. It scares me.

72.     The nightmares and sleepwalking are persistent. I do not have an exact number for the nightmares because some weeks are better than others, and I have improved over time. But even now, the nightmares and sleepwalking are prevalent in my life. And as a result, I do not get adequate rest. I feel uncomfortable going to sleep because I am not sure what will happen that night. Will the nightmares come tonight? Will the sleepwalking happen tonight?

73.     These are just examples of the harm. Not everything.

### After Car Wash Zone: fear of pursuing case and courage to move forward

74.     After my work ends at Car Wash Zone, Raquel speaks with me one more time. In that conversation, Raquel tells me she will not be able to even speak with me. She says Jose Palacios and her stepfather Jorge Trejo told Car Wash Zone employees that no one should speak with me. She says she is nervous that her stepfather will do something bad if she continues to speak with me.

75.     Raquel tells me she is scared to confront her stepfather Jorge Trejo or to make any declaration against him about any of the bad things he has done to her or to me. She says he is abusive to her. She is not specific about whether the abuse is physical or emotional, but I

understand the abuse to be both physical and emotional based on just how scared she is of him and the way she talks about it. I also saw that he was abusive to her in his role as supervisor at Car Wash Zone.

76.     I also feel scared of Jorge Trejo and scared to move forward against Car Wash Zone. I am scared that he will retaliate in a way that physically harms someone, like me or his stepdaughter Raquel. I continue to have the nightmares. At one point, the fear is so strong that I think I will not pursue anything. But my concern about this happening to other people, other girls, other women, is what finally leads me to go ahead and pursue a case against Car Wash Zone.

### Car Wash Zone's false claim about screaming profanities

77.     After I pursue a case against Car Wash Zone, I learn that Car Wash Zone claims I screamed profanities at Jorge Trejo. That claim is not true. I did not scream profanities at Jorge Trejo. I have read the statement of Jorge Trejo that is in Spanish with "ELDORADO 000056" at the bottom. I am able to read Spanish. Nothing in that statement says I screamed profanities at him. Nothing in that statement says I screamed at all. Nothing in that statement says I used profanities at all. The Spanish language does have words that mean profanity, curse, or profane word. The statement does not have any of those words in it. The statement just says I "insult" him or "insulted" him.

**My name is Maria Noris Marquez. My date of birth is May 27, 1986. I declare under penalty of perjury that my testimony above is true and correct to the best of my recollection.**

**Executed in Dallas County, Texas on October 31, 2022.**

_____
Maria Marquez

# Exhibit 2

# Declaration of Miguel Rodas

**DECLARATION OF MIGUEL RODAS**

1.      My name is Miguel Rodas. I am over 18 years old. The facts and statements that I make in this declaration are true and accurate to the best of my recollection. Unless otherwise stated or apparent from my testimony, I have personal knowledge of the facts and statements that I make in this declaration. I was informed that "personal knowledge" means that I personally witnessed or experienced something using one or more of my senses, like sight, hearing, smell, or touch. I was also informed that "personal knowledge" includes how I feel.

2.      I worked at the BMW of Dallas in 2018 as a Parts Director. In this role, I met and observed Maria Noris Marquez, who worked as a detail technician at our dealership through a third-party vendor.

3.      Maria was a star worker. She worked harder than anyone in her department and probably the best worker we had working for us. She was always hustling, so much that she would be sweating from the time she started her shift until it was over.

4.      Maria was not someone you could just find anywhere. Not only was her work ethic top notch, but she was smiling and friendly, which is how we expected our employees to interact with customers and other employees.

5.      I never once witnessed Maria raise her voice at anyone at work or use profanities.

**My name is Miguel Rodas. I declare under penalty of perjury that my testimony above is true and correct to the best of my recollection.**

**Executed in Dallas County, Texas on October 25, 2022.**

Miguel Rodas

# Exhibit 3

# Excerpts from
# Oral Deposition
# of Maria Marquez

Maria Marquez - March 2, 2022

```
1              IN THE UNITED STATES DISTRICT COURT
2              FOR THE NORTHERN DISTRICT OF TEXAS
3                      DALLAS DIVISION
4   MARIA MARQUEZ,                )
                                  )
5        Plaintiff,               )
                                  )
6   VS.                           )  NO. 3:21-cv-01847-C
                                  )
7   ELDORADO CW INVESTMENTS,      )
    LTD. d/b/a THE CAR WASH       )
8   ZONE, and ECWI, LLC,          )
                                  )
9        Defendants.              )
10
11                   ORAL DEPOSITION OF
12                     MARIA MARQUEZ
13                     MARCH 2, 2022
14
15
16
17              ORAL DEPOSITION of MARIA MARQUEZ,
18   produced as a witness at the instance of the
19   Plaintiff, and duly sworn, was taken in the
20   above-styled and numbered cause on the 2nd of March,
21   2022, from 10:07 a.m. to 4:48 p.m., before Audra B.
22   Paty, CSR in and for the State of Texas, reported by
23   machine shorthand, in the City of Dallas, County of
24   Dallas, State of Texas, pursuant to Notice and the
25   Federal Rules of Civil Procedure.
```

Maria Marquez - March 2, 2022

```
1                    A P P E A R A N C E S
2         FOR THE PLAINTIFF:
              Ms. Amy E. Gibson
3             GIBSON WILEY PLLC
              1500 Jackson Street
4             Suite 109
              Dallas, Texas 75201
5             214.522.2121
              amy@gwfirm.com
6
              Ms. Shana Hope Khader
7             EQUAL JUSTICE CENTER
              1250 West Mockingbird Lane
8             Suite 455
              Dallas, Texas 75247
9             469.228.4226
              skhader@equaljusticecenter.org
10
              Ms. Caitlin Boehne
11            EQUAL JUSTICE CENTER
              314 East Highland Mall Boulevard
12            Suite 401
              Austin Texas 78752
13            512.474.0007
              cboehne@equaljusticecenter.org
14
15        FOR THE DEFENDANTS:
              Ms. Kristina Pierre-Louis
16            FIGARI + DAVENPORT, LLP
              901 Main Street
17            Suite 3400
              Dallas, Texas 75202-3796
18            214.939.2018
              kristina.pierre-louis@figdav.com
19
20
21
          ALSO PRESENT:
22            Ms. Myrna Ramirez, Interpreter
23
24
25
```

Maria Marquez - March 2, 2022

```
1                    I N D E X
2   WITNESS                                    PAGE
3   MARIA MARQUEZ
4   EXAMINATION BY MS. PIERRE-LOUIS               5
5   EXAMINATION BY MS. GIBSON                    88
6   EXAMINATION BY MS. PIERRE-LOUIS             108
7
8
    CORRECTIONS MADE BY WITNESS                 112
9
    SIGNATURE OF WITNESS                        113
10
    REPORTER'S CERTIFICATION                    114
11
12  EXHIBITS                              IDENTIFIED
13  Exhibit  1 - Harassment poster              26
14  Exhibit  2 - The Car Wash Zone Employee
                  Handbook                      26
15
    Exhibit  3 - 1-29-20 Notice of Charge of
16                Discrimination                42
17  Exhibit  4 - 5-27-21 McComber letter to EEOC 58
18  Exhibit  5 - Original Complainat and Jury Demand 65
19  Exhibit  6 - Maria Marquez's Objections and
                  Responses to Defendants' First
20                Requests for Production of
                  Documents                     70
21
    Exhibit  7 - Trejo Facebook posts           77
22
23
24
25
```

Maria Marquez - March 2, 2022

```
 1              P R O C E E D I N G S
 2              THE REPORTER:  My name is Audra Paty, a
 3   Texas Certified Shorthand Reporter.  I am reporting
 4   the deposition from Ovilla, Texas via stenographic
 5   means.  The witness is located in Dallas, Texas.  The
 6   witness will be sworn in remotely, pursuant to
 7   agreement of all parties.  The parties stipulate that
 8   the testimony is being given as if the witness was
 9   sworn in person.
10              All parties please state their
11   appearances and agreement on the record.
12              MS. GIBSON:  Amy Gibson for plaintiff
13   Maria Marquez.  Also present is Shana Khader and
14   Caitlin -- how do you say your last name, Caitlin?
15              MS. BOEHNE:  Boehne.
16              MS. GIBSON:  Boehne, B-O-E-H-N-E.  And
17   Khader is K-H-A-D-E-R.  I guess you can see it on the
18   screen.  And then, Kristina, if you want to introduce
19   yourself.
20              MS. PIERRE-LOUIS:  Sure.
21              MS. GIBSON:  Then we'll do --
22              MS. PIERRE-LOUIS:  Oh, I just didn't know
23   if you were done.  I'm sorry, Amy.  Good morning.  My
24   name is Kristina Pierre-Louis representing El Dorado
25   CW Investments, LTD, d/b/a The Car Wash Zone and ECWI,
```

10:07:59 18

Maria Marquez - March 2, 2022

1   LLC, the defendants in this lawsuit.

2              MS. GIBSON:  The witness will read and

3   sign on the transcripts and the parties have also

10:08:29  4   agreed that for not just this deposition, but all

5   depositions in this case objections to the form of the

6   question will be limited to objection, form, unless

7   the basis is requested.  We're essentially going to

8   follow the Texas rule on objections to the form of the

9   question.  Is that correct?

10             MS. PIERRE-LOUIS:  That's correct.

11             MYRNA RAMIREZ,

12   the interpreter hereinbefore named, was duly sworn to

13   interpret from English into Spanish and Spanish into

14   English the following proceedings:

15                  MARIA MARQUEZ,

16   having been first duly sworn, testified as follows:

17                  EXAMINATION

18   BY MS. PIERRE-LOUIS:

10:08:56  19       Q.  Good morning, Maria.  My name is Kristina

20   Pierre-Louis.

21       A.  Good morning.

22       Q.  And I represent the defendants in this

10:09:54  23   lawsuit.

24       A.  Okay.

25       Q.  I would like to start off with some questions

Maria Marquez - March 2, 2022

1  about yourself.  **Can you please state your full name**
2  **for the record?**
3       **A.   Maria Noris Marquez.**
4       Q.   And how old are you, Maria?
5       A.   35 years old.
10:10:28  6       Q.   And when is your date of birth?
7       A.   May 27 of '86.
8       Q.   And I know you stated previously, do you
9  currently live in Dallas, Texas?
10       A.   Yes.
11       Q.   How long have you lived in Dallas?
10:11:04  12       A.   Seven years.
13       Q.   At your current residence, do you live with
14  anyone?
15            MS. GIBSON:  Don't -- okay.  You can
16  answer -- wait.  Don't answer yet.  I'm going to
17  object and instruct the witness not to answer who
18  lives with you, but you can answer whether or not
19  anyone lives with you.
20            And this line of objections is based on
21  issues that arise in this type of industry as well as
10:11:51  22  others like processing plants or restaurants or
23  housekeeping where certain questions directly or
10:12:22  24  indirectly get at immigration status.  And we're
25  relying on a line of cases starting with 814 F.2d 168.

Maria Marquez - March 2, 2022

1      Q.   (BY MS. PIERRE-LOUIS)   So can we talk about,
2  when did you start working at The Car Wash Zone?
3      A.   I started in August of 2018.
10:39:26  4      Q.   Is it accurate to say that she started on or
5  around August 23rd, 2018?
6      A.   Yes.
7      Q.   And how did it come that you were hired to
8  work at The Car Wash Zone?
10:40:07  9      A.   I was working at Carmel Car Wash and I knew
10  Jose there and also Jorge.   And Jose went to Car Wash
11  Zone to work and he asked me if I would go with him to
12  work there.
13               MS. PIERRE-LOUIS:   Okay.   Was she
14  continuing her answer?
10:41:02 15      A.   Jose said that we would both go to -- just
16  the two of us to Car Wash Zone, and I thought it was
17  okay to go with him because despite the fact that it
18  was far away from home.   I had already suffered from
19  sexual harassment by Jorge at Carmel Car Wash.   So I
20  decided to go with Jose and go far away from Jorge.
10:41:27 21      Q.   Okay.   And when she references Jose, is she
22  referring to Jose Palacios?
23      A.   Yes.
24      Q.   And Jorge, does that mean Jorge Trejo?
25      A.   Yes.

Maria Marquez - March 2, 2022

1          Q.   And those two are the individuals involved in
2    this lawsuit, correct?
10:42:03  3          A.   Yes.
4          Q.   Okay.   So can we agree that when I say Jorge,
5    I mean Jorge Trejo?   When I say Jose, I'm referring to
6    Jose Palacios?
10:42:31  7          A.   Yes.
8          Q.   Okay.   What were you hired to do at The Car
9    Wash Zone?
10         A.   To clean the cars.
11              THE INTERPRETER:   And the interpreter
12   needs repetition of the word she used.
13         A.   To do the detailing of the cars and cleaning
14   the cars.
15         Q.   (BY MS. PIERRE-LOUIS)   Were there any other
16   job duties?
10:43:15  17         A.   To do maybe everything that is involved
18   around cleaning a car.
19         Q.   Okay.   Did her job duties change -- sorry.
10:43:28  20   Were her job duties changed from October 2018 to
21   October of 2018?
22         A.   No.   No they did not change.
23         Q.   And what was Jorge's role at The Car Wash
24   Zone?
25              MS. GIBSON:   Objection, form.   You can

Maria Marquez - March 2, 2022

1  answer.

10:45:47  2       Q.  (BY MS. PIERRE-LOUIS)  I can ask it a
3  different way.  What was Jorge's job at The Car Wash
4  Zone?
5              MS. GIBSON:  Sorry.  Same objection.
6  Kristina, it's just time frame was my form objection.
7              MS. PIERRE-LOUIS:  Well, obviously it
8  would be during the time she worked there, but I can
9  say it more specifically.
10             MS. GIBSON:  Okay.
11       Q.  (BY MS. PIERRE-LOUIS)  During the time that
12  you worked there, Maria, what was Jorge's role and/or
13  job at The Car Wash Zone?
14             MS. GIBSON:  Object to form.
15             You can answer.
16       A.  He was hired -- I saw him working the cashier
17  and selling or collecting money from the people who
18  took their cars to wash.  And after a few weeks he
19  became head of my work area.
20       Q.  (BY MS. PIERRE-LOUIS)  And by head of work
21  area, do you mean manager?
22       A.  Yes.
23       Q.  And during your time working at The Car Wash
24  Zone, how often did you interact with Jorge?
10:46:43  25       A.  I didn't interact with him.  He would take

Maria Marquez - March 2, 2022

1  advantage of every opportunity, every moment to be
2  near me.  He would come close to my working area and
10:46:59 3  hug me or try to hug me at all times at all parts of
4  The Car Wash Zone, the tunnel of the car wash, the
5  dining area.  Where I was working he would come close
6  and try to be around me.  He was looking always at
7  trying to be close to me.
8       Q.  Were these interactions only in person?
10:47:35 9       A.  Yes.
10       Q.  You never -- sorry.  Let me rephrase the
11  question.  Did you ever interact with Jorge over the
12  phone?
13       A.  No.
14       Q.  Did you ever interact with Jorge via text
10:47:55 15  message?
16       A.  No.
17       Q.  Did you ever interact with Jorge via e-mail?
18       A.  No.
19       Q.  And you also stated that you worked with Jose
20  at The Car Wash Zone, correct?
10:48:32 21       A.  Yes.
22       Q.  And during your time working at The Car Wash
23  Zone, what was Jose's position or title at The Car
24  Wash Zone?
25       A.  General manager.

Maria Marquez - March 2, 2022

| | | |
|---|---|---|
| 10:48:54 | 1 | Q.  How often did you interact with Jose? |
| 10:49:31 | 2 | A.  Sometimes he will tell us, like, instruct us |
| | 3 | what to do at the work area, but it was not that |
| | 4 | often.  He would go pass by the office and go leave |
| | 5 | his work area and leave The Car Wash Zone. |
| | 6 | Q.  During her employment at The Car Wash Zone, |
| | 7 | who made her -- who made your schedule? |
| 10:50:04 | 8 | A.  Jose. |
| | 9 | Q.  And while you were working at The Car Wash |
| | 10 | Zone other than Jose and Jorge, what other employees |
| | 11 | did you work with? |
| 10:50:42 | 12 | A.  With Santos, Brian, Iris, Raquel. |
| | 13 | Q.  And during your time at The Car Wash Zone, |
| | 14 | how long was Jorge your manager? |
| 10:51:02 | 15 | A.  For about two or three weeks.  I don't |
| | 16 | remember exactly how long. |
| | 17 | Q.  And your last day working at The Car Wash |
| | 18 | Zone was October 21st, 2018, correct? |
| 10:51:30 | 19 | A.  I think, yes.  I'm not sure about the date. |
| | 20 | Q.  Can we say on or about October 21st, 2018 was |
| | 21 | your last day at The Car Wash Zone? |
| | 22 | A.  Yes. |
| | 23 | Q.  I would like to move on to discuss the |
| | 24 | harassment policy at The Car Wash Zone.  And so I need |
| 10:51:58 | 25 | to share my screen so give me one second to do that. |

Maria Marquez - March 2, 2022

```
           1        A.  Okay.
10:52:47   2               MS. PIERRE-LOUIS:  Is everyone able to
           3    see my screen right now?
           4               MS. GIBSON:  Yes, but it's small.
           5               MS. PIERRE-LOUIS:  Okay.  Let me see if I
10:52:58   6    can make it bigger.  Is this better?
           7               MS. GIBSON:  Yes.
           8        Q.  (BY MS. PIERRE-LOUIS)  Ms. Marquez, do you
           9    recognize this poster?
          10        A.  No.
          11        Q.  Do you understand that it was produced by
          12    your attorneys in this lawsuit?
          13               MS. GIBSON:  Object to form.
          14               You can answer.
          15        A.  I did not understand the question.
          16        Q.  (BY MS. PIERRE-LOUIS)  Do you understand that
          17    your attorneys provided me with the picture of this
10:53:54  18    poster?
          19               MS. GIBSON:  Object to form.
          20               You can answer.
          21        A.  I haven't seen that poster before maybe I did
10:54:27  22    not pay attention to it because it's in English and I
          23    didn't know what it stated there.
          24               MS. PIERRE-LOUIS:  Nonresponsive.  That's
          25    not the question that I asked.
```

Maria Marquez - March 2, 2022

1        MS. GIBSON:  Okay.  So, Kristina, please
2   don't interrupt her.  You can assert your objection
3   when she's done.
4        A.  At The Car Wash Zone, they do not have
10:54:54   5   posters in Spanish because most of the people, we all
6   speak Spanish, nobody speaks English, and they were --
10:55:29   7   we were never trained on sexual harassment.  Nobody
8   was trained there on sexual harassment and to make it
9   clear to employees that they should not harass anyone.
10        MS. PIERRE-LOUIS:  I'm going to object as
11   nonresponsive.
12        Q.  (BY MS. PIERRE-LOUIS)  Maria, that is not the
13   question that I asked you.  What I asked was, do you
14   understand that your attorneys produced this photo of
10:55:56  15   this poster that they state was hanging at The Car
16   Wash Zone?  What was the answer to that question?
17        MS. GIBSON:  All right.  Ask her and then
18   I'll do my objection.
19        Object to the form of the question.
10:56:29  20        You can answer.
21        A.  Okay.
22        Q.  (BY MS. PIERRE-LOUIS)  That is not -- it's a
23   yes or no question.  Okay doesn't mean -- that's not
24   responsive to my question.
10:56:58  25        MS. GIBSON:  And I'm going to object to

Maria Marquez - March 2, 2022

```
 1   you instructing our client that way.  Although, you
 2   can assert your objections.
 3                 Is there a question on the table?
 4                 MS. PIERRE-LOUIS:  She never answered the
 5   previous question that I stated that you objected to
 6   so we're still waiting for a response.
 7                 MS. GIBSON:  Okay.  Well, you might need
 8   to remind her what the question is then.
 9                 MS. PIERRE-LOUIS:  Okay.  I'll ask the
10   question again, then, for the third time.
11       Q.  (BY MS. PIERRE-LOUIS)  Ms. Marquez, do you
12   understand that this photo of this poster was produced
13   by your attorneys?
14                 MS. GIBSON:  Objection, form.
15                 You can answer.
16       A.  I do not recognize that poster.
17       Q.  (BY MS. PIERRE-LOUIS)  Okay.  So,
18   Ms. Marquez, it's your position that your attorneys
19   produced this poster that you have never seen before?
20       A.  No, not at The Car Wash Zone.
21       Q.  I would like to show another exhibit, the
22   employee handbook that we produced in this lawsuit.
23   Ms. Marquez, do you recognize this employment
24   handbook?
25       A.  No.
```

Timestamps (left margin):
10:57:27 — line 5
10:57:55 — line 15
10:58:44 — line 20
10:58:59 — line 23

Maria Marquez - March 2, 2022

1        Q.   Okay.   Ms. Marquez, it's your position that

2   you were -- you never saw the poster and that you

10:59:23  3   never received the employee handbook; is that correct?

10:59:58  4        A.   That employers -- employees manual, I never

5   received one.   That poster I saw, well, it has the

6   logo of The Car Wash Zone just as all of our shirts,

7   but I never even -- I didn't know that there was an

11:00:16  8   employee's handbook.

9        Q.   So, Ms. Marquez, it's your position -- sorry.

10   Strike that.   You claimed that you were never trained

11   on sexual harassment at The Car Wash Zone, however,

11:00:40  12   you did report harassment to your supervisor Jose; is

13   that correct?

14        A.   Yes.

15        Q.   Ms. Marquez, and how did you know to report

11:01:07  16   to Jose, report harassment to Jose?

11:01:57  17        A.   Because those actions that Jorge did were --

18   like there is no woman who would like to have someone

19   touching you and trying to hug you or someone being

20   behind a woman.   In this case it was me with Jorge

21   behind you was -- his thing is aroused and while I was

22   cleaning the car and these are actions that are

23   inappropriate.   It is sexual harassment even though we

11:02:28  24   didn't receive training on that, I know that is sexual

11:02:32  25   harassment.   I think this is something traumatic for a

Maria Marquez - March 2, 2022

1   woman to have a guy behind you when you are bending
2   down and he tell you see how you make me feel with his
3   penis aroused.   You could see that through his pants.
4                    MS. PIERRE-LOUIS:   Objection to --
5   nonresponsive to all of that testimony.   That's not
6   the question that I asked, Ms. Marquez.   I asked you
7   how did you know to report the harassment that you
8   allege to Jose.
9                    MS. GIBSON:   Object to form.
10                    You can answer.
11           A.   I know because -- I knew because I was going
12   through a difficult situation.   When he was raised or
13   promoted to head of the area, he started reprimanding
14   me and he was taking advantage of his position and
15   then the situation got worse on sexual harassment.   So
16   it was a situation that was very difficult for me, and
17   that's the reason why I reported him to Jorge -- I
18   mean to Jose.
19           Q.   (BY MS. PIERRE-LOUIS)   I want to turn back to
20   the employee handbook.   And, Ms. Marquez, I know you
21   state that you have never seen the employee handbook,
22   but would you agree that it states if your immediate
23   supervisor is part of the problem, go to the next
24   level of management?
25                    THE INTERPRETER:   Counsel, can you tell

11:03:28   7
11:03:49   10
11:04:59   16
11:05:27   23

Maria Marquez - March 2, 2022

1   me where you are stating that so I can read through it

2   because it was a long sentence?

3                    MS. PIERRE-LOUIS:  Can you see where I'm

4   pointing right here?

11:05:54  5        A.  Okay.

6        Q.  (BY MS. PIERRE-LOUIS)  And that's what you

7   did, correct, you went to your next level supervisor,

8   you went to Jose?

9        A.  Yes.

10                   MS. GIBSON:  Okay.  I'm going to move on

11  from the employee handbook.  I'm going to stop sharing

12  my screen.

13                   (Exhibit No. 1 and 2 marked.)

14                   THE REPORTER:  This is the reporter.  I

15  just want to verify Exhibit 1 was the sign, the

16  picture of the sign, and Exhibit 2 was the employee

17  handbook, right?

18                   MS. PIERRE-LOUIS:  Yes, that's correct.

19                   THE REPORTER:  Thank you.

20                   MS. GIBSON:  Kristina, do you want to

21  identify those by Bates?

11:06:58  22                   MS. PIERRE-LOUIS:  I don't know if I have

23  the Bates number pulled up on this one.

24                   MS. GIBSON:  That's okay.  That's okay if

25  you don't.

Maria Marquez - March 2, 2022

```
         1              MS. PIERRE-LOUIS:  Okay.
         2         Q.  (BY MS. PIERRE-LOUIS)  I would like to move
            on from the harassment policies at Car Wash Zone.
         3
         4              What was your work schedule during your
11:07:17 5  employment at The Car Wash Zone?
         6         A.  From 9:00 or 10:00 in the morning to 7:00,
         7  8:00 in the afternoon.  Sometimes I will leave work at
11:08:14 8  6:00, sometimes at 8:00.
         9         Q.  And how many names a week did you work?
        10         A.  Six.
        11         Q.  And who worked with you during your shifts
        12  typically?
11:08:16 13        A.  Raquel, Santos, Iris, Jorge, Brian every day.
        14  Sometimes Brian or Jorge will stay late till 8:00 to
        15  close and in other occasions Raquel and myself will
        16  stay until 8:00 together with Jorge Brian.
11:08:55 17        Q.  Was Brian another manager or what was his
        18  role?
        19        A.  Only an employee.
        20        Q.  An employee just like yourself, Ms. Marquez?
        21        A.  Yes.
        22        Q.  Who did you regularly communicate with at The
11:09:33 23  Car Wash Zone?
        24              MS. GIBSON:  Object to form.
        25              You can answer.
```

Maria Marquez - March 2, 2022

1    A.  Jose.

2    Q.  (BY MS. PIERRE-LOUIS)  Jose was the only

3  person you spoke to while you worked there?

4          MS. GIBSON:  Object to form.

5          You can answer.

11:10:17  6    A.  I spoke -- when I asked -- I had a question

7  about work related, I would ask Jose, but talk or ask

8  about something else I would talk to those in my -- in

11:10:28  9  the detailing zone, which would be Santos, Iris,

10  Raquel, and myself.

11    Q.  (BY MS. PIERRE-LOUIS)  Did you ever socially

12  interact with any Car Wash Zone employees?

11:11:21  13    A.  We would say hi to each other in the

14  mornings.  Sometimes we would communicate to each

11:11:28  15  other on how to do the job.  In the detail section, it

16  was Santos, Iris, Raquel and myself.  Jorge and Brian,

17  they were in a different area and that was before

18  Jorge became the chief or head of area.  And once he

19  became the chief of area, then he would pass by my

11:11:52  20  work area.  They wouldn't let us be just doing nothing

21  there.  We would be sweeping the floor or doing

22  something else, but they would not let us be there

23  just talking.

24    Q.  Did you ever socially interact with any of

25  your coworkers outside of work?

Maria Marquez - March 2, 2022

1          MS. PIERRE-LOUIS:  Okay.  I think it's
2    time for another break.
3          MS. GIBSON:  Okay.  Are we off the
4    record?
5          MS. PIERRE-LOUIS:  Uh-huh.
6          (Recess 11:15 to 11:25.)
11:23:31  7    Q.  (BY MS. PIERRE-LOUIS)  Ms. Marquez, you first
8    reported Jorge's harassment towards you to Jose on
9    October 20th, 2018, correct?
10    A.  Yes.
11:23:58  11    Q.  Can you describe the harassment that you
12    faced from Jorge?
13          MS. GIBSON:  Object to form, but you can
11:24:10  14    answer.
15    A.  He is a person who has a very dirty mind and
16    he's dangerous.  I suffered harassment by Jorge when
17    we wanted to hug me.  Whenever I was alone or I was
11:25:27  18    with Raquel, he tried to hug me.  I would hide myself
19    behind Raquel and I would tell her to stop -- make him
20    stop and to tell him something.  Whenever he saw that
21    I was by myself, he would try to do that.
22          And then when he became manager, things
11:25:49  23    got worse.  And I would tell Raquel to make him stop,
11:26:29  24    to make him go away from me because she is his family.
25    She's his stepdaughter.  So when he became a manager,

Maria Marquez - March 2, 2022

1   things got worse.  He would stand behind me when I was
2   bending over cleaning the car and he would tell me
3   look at me, look at me, and he had his penis hard.
4   And he would tell me, look what you do to me.  And it
5   was just very disgusting.  His penis was hard.  You
6   could see that through his pants.
7                      He is a -- he has a twisted and very evil
8   mind.  He is violent.  He's disgusting.  He has no
9   brains and the way he is acting like I would tell
10  Raquel to ask him to go away, to stay away from me.
11  Since she is family, she's his stepdaughter, but she's
12  also afraid of him.  And he is disgusting person.  I
13  think that he was even a gang member.  So he has a
14  very twisted and evil mind.
15                      On one occasion, he was trying to hug me,
16  and he is -- he offered me even a bracelet and a
17  chain, a gold bracelet and chain.  And he would even
18  offer money to go out with him.  He would offer money
19  to go out with him.  I think a person like that should
20  not be credible, but up to now they still believe in
21  him.  It's a person who was a member, a gang member in
22  El Salvador, he's dangerous, and he could do physical
23  damage to somebody.
24                      It's a person that even abused his own
25  family.  Raquel is afraid of him and also her mother.

11:26:58  5
11:27:02  6
11:27:55  8
11:28:55  17
11:29:28  21

Maria Marquez - March 2, 2022

1     Her mother is Jorge's wife and they are cousins.  They
2     are family, but he -- even though they are family, he
3     was with her.  So it's a person who is very dangerous.
11:30:56 4     I don't understand why they keep defending him with
5     that background.
6               MS. PIERRE-LOUIS:  I'm going to object to
7     all the nonresponsive portions of that testimony.
8       Q.  (BY MS. PIERRE-LOUIS)  My question is limited
9     to any harassment that Ms. Marquez suffered or alleged
11:31:15 10     that she suffered at The Car Wash Zone.
11               MS. GIBSON:  Object to form.  Object to
12     instructing the witness about whether that was
13     responsive.  The original question was very broad.
14               MS. PIERRE-LOUIS:  I can object
15     nonresponsive.
16               MS. GIBSON:  You can.  You just can't
17     instruct her.  The original -- I have more, but can
18     you interpret that piece?
19               The original question was absolutely
20     something very different and more broad.
11:32:26 21               You can answer.
22       A.  What was the question?
11:32:28 23       Q.  (BY MS. PIERRE-LOUIS)  Question was, can she
24     explain specifically the incidence of harassment that
25     she alleges she suffered from Jorge at The Car Wash

Maria Marquez - March 2, 2022

| | | |
|---|---|---|
| 11:32:46 | 1 | Zone while she was an employee? |
| | 2 | MS. GIBSON:  Objection, form. |
| | 3 | You can answer. |
| 11:34:46 | 4 | A.  Okay.  This is not alleged harassment.  This |
| | 5 | is the truth.  This is what happened.  These are the |
| | 6 | facts.  It is my testimony and it is the truth.  It is |
| 11:34:56 | 7 | not alleged.  It was harassment and Jorge tried to hug |
| | 8 | me all the time he had a chance to do so.  He tried to |
| | 9 | hug me and touch me.  I would just run away from him |
| | 10 | because I didn't want him to touch me.  I was afraid |
| | 11 | of him.  He was looking for an opportunity to hug me |
| | 12 | and once he offered me money to go out with him.  He |
| | 13 | offered me a gold chain and bracelet.  I rejected |
| 11:35:28 | 14 | Jorge at all times and after that he would stand and |
| | 15 | would try to hug me.  And even he was behind me and |
| | 16 | when I was working, I was cleaning a car.  I was bent |
| | 17 | over and he was behind me with his hard penis and he |
| | 18 | would tell me turn around, look at me, see what you do |
| 11:35:56 | 19 | to me.  He had his penis hard and that he did on two |
| | 20 | occasions.  The same thing, I was bending over.  He |
| | 21 | was behind me with his penis hard, and he would tell |
| | 22 | me look at me, look at what he would do to me. |
| | 23 | Q.  (BY MS. PIERRE-LOUIS)  I would like to talk |
| | 24 | through. |
| 11:36:21 | 25 | MS. GIBSON:  I'm not sure she's done. |

Maria Marquez - March 2, 2022

```
 1                    MS. PIERRE-LOUIS:  Oh, I'm going to
 2       object.  She was done and I was asking my next
 3       question.
 4                    MS. GIBSON:  No, no, the interpreter --
 5                    MS. PIERRE-LOUIS:  She stopped.
 6       Everybody stopped and then I started to ask my next
 7       question and then you said is she not done?
 8                    MS. GIBSON:  I asked -- no, I said --
 9                    MS. PIERRE-LOUIS:  So I'm going to move
10       on with my question.
11                    MS. GIBSON:  No.
12                    MS. PIERRE-LOUIS:  You can object, but
13       I'm moving on with my questioning.
14                    MS. GIBSON:  Okay.  Let me --
15                    MS. PIERRE-LOUIS:  I'm moving on with the
16       question.
17                    MS. GIBSON:  Kristina, let me object.
18       What I --
19                    MS. PIERRE-LOUIS:  You already objected.
20                    MS. GIBSON:  No, no, because you're
21       cutting her off so let me --
22                    MS. PIERRE-LOUIS:  I did not cut her off.
23       She was done speaking and I was asking my next
24       question.  You cut me off.
25                    MS. GIBSON:  Can we get an answer?
```

Maria Marquez - March 2, 2022

1          MS. PIERRE-LOUIS:  She answered the
2    question.  She's already answered the question.
3          MS. GIBSON:  You asked her a really broad
4    question.
5          MS. PIERRE-LOUIS:  No, I didn't.
6          MS. GIBSON:  Kristina, may I please ask
7    and get an answer whether she was finished her answer
8    explaining?
9          MS. PIERRE-LOUIS:  It's my deposition.
10   You can cross-examine during your direct if you want
11   to, but I'm moving on with the deposition.  You're
12   interrupting me.
13         MS. GIBSON:  I'll take that as a no that
14   you will not let me ask to make sure she was finished.
15         MS. PIERRE-LOUIS:  No, because I was
16   speaking.
17         MS. GIBSON:  And I object to you cutting
18   off the witness.
19         MS. PIERRE-LOUIS:  I did not cut off the
20   witness.
21         MS. GIBSON:  Especially when we have to
22   have an interpreter so she has to give some of her
23   answers in Spanish.  That is my objection.
24         MS. PIERRE-LOUIS:  She did and then I
25   started speaking.  She did not continue to speak over

Maria Marquez - March 2, 2022

| | |
|---|---|
| | 1 |

1 me.  So I'm going to move on with the deposition.

11:37:59 2             MS. GIBSON:  She doesn't have to speak

3 over you.  She is being polite.

4             MS. PIERRE-LOUIS:  That's the only time

5 you have ever cut me off in speaking, so I'm just

6 going to continue.  The objection is on the record

7 now.

8     Q.  (BY MS. PIERRE-LOUIS)  Okay.  I would like to

9 speak about each one of these instances that you

10 testified to.  First you stated that Jorge tried to

11 hug you.  When you say "tried," did he actually make

11:38:28 12 physical contact or did he just attempt to hug you?

13     A.  He put his arms around my shoulders.  I went

11:38:57 14 away and I pushed him to the back and I went away.

15     Q.  And how many times did you testify that this

16 happened, that he tried to hug you?

17             MS. GIBSON:  Object to form.

11:39:15 18             You can answer.

19     A.  It was more or less every day.  It was five

20 times a week, sometimes two times a day.  He attempted

21 to hug me, even three times a day, but when he put his

22 arms around my shoulder, it was five times.

23     Q.  (BY MS. PIERRE-LOUIS)  And when --

11:40:04 24             MS. PIERRE-LOUIS:  Did she have more to

25 say then?

Maria Marquez - March 2, 2022

```
              1        A.  Yes.  That time when he put his hands on my
11:40:30      2   shoulders, it's because I hadn't seen him and I didn't
              3   expect him to touch me and he was trying to hug me.
              4   I'm sorry.  Sometimes he would come from behind very
              5   silently so that I would not hear him.  And while I
11:41:00      6   was cleaning the tunnel of The Car Wash Zone with
              7   Raquel, he would show up just from behind.
              8        Q.  (BY MS. PIERRE-LOUIS)  And just so I
              9   understand your testimony correctly, you're saying
             10   that every day that you work with Jorge at The Car
             11   Wash Zone, he tried to hug you?
11:41:34     12        A.  Yes.
             13        Q.  And did Jorge try to hug you before he was
             14   your manager?
             15        A.  Yes.
             16        Q.  And then he hugged you or tried to hug you
             17   after he became manager?
11:42:07     18        A.  Yes, and once he became a manager, he stood
             19   up behind me with his hard penis.
             20        Q.  Okay.  And this incident when he stood behind
             21   you with his penis -- erect penis, you stated that
             22   this happened two times, correct?
11:42:36     23        A.  Yes.
             24        Q.  And then you mentioned that Jorge offered you
             25   a gold chain bracelet to go out with you; is that
```

Maria Marquez - March 2, 2022

```
          1   testified about regarding Jorge behavior, can you give
11:49:00  2   me a day or time -- strike that.  Let me answer the
          3   last question differently.
          4                 Can you provide dates or times that you
          5   allege that Jorge came up behind you with his erect
11:49:18  6   penis the two times that you testified he did that?
          7       A.  I don't have an exact day.  It was one week
          8   before the last day that I went to work.  I don't know
11:49:57  9   exactly about those two days, but it was more or less
         10   at that time.
         11       Q.  Did you tell -- strike that.
         12                 Before you spoke with Jose on October
         13   20th and 21st of 2018, did you let anybody else at The
11:50:22 14   Car Wash Zone know about these incidents with Jorge.
         15       A.  Raquel saw it all.  When Jorge was there with
         16   his penis erected then Raquel was there and he was
         17   talking dirty, disgusting, and to go away.  And I told
11:51:20 18   that to Raquel so Raquel saw that.  Raquel was there.
         19       Q.  The first time that you told -- sorry.
         20   Strike that.
         21                 It's correct that the first time you told
         22   management at The Car Wash Zone about Jorge's
         23   harassment towards you was on October 20th and 21st of
         24   2018, correct?
         25                 MS. GIBSON:  Object to form.
```

Maria Marquez - March 2, 2022

```
11:51:49   1              You can answer.
           2        A.  I told Jose all that Jorge was doing on that
11:52:55   3   day to Jose Palacios.  And when I told him that he was
           4   with his hard penis behind me he just laughed.  And he
           5   didn't give any importance to it and he made fun of me
           6   and he said that he would talk to Jorge, but he would
           7   not remove him from his job.  And if I wanted I could
           8   continue working there, but it would be under Jorge's
           9   orders and if not that I could leave.
11:53:29  10              MS. PIERRE-LOUIS:  Object to the
          11   nonresponsive portions of that testimony.
          12        Q.  (BY MS. PIERRE-LOUIS)  I'm going to share my
          13   screen.  Give me one second to do that.
          14              Okay.  What's on the screen currently is
          15   the charge of discrimination that you filed with the
          16   EEOC.  Can you see that?
11:54:12  17        A.  Yes, but it's too small.  I cannot read
          18   anything.
          19        Q.  Okay.  I made it bigger.
          20        A.  Okay.
11:54:29  21        Q.  So as you can see here it says, I declare
          22   under penalty of perjury that the above is true and
          23   correct?
          24        A.  Okay.
          25              MS. GIBSON:  You keep saying okay.  Can
```

Maria Marquez - March 2, 2022

1    meeting with him on October 21st, what did you tell
11:59:52  2    Jose about Jorge's treatment towards you?
3        A.   After that Jorge, when he became manager of
4    my area, he harassed me twice.   Two times with his
12:01:28  5    hard penis and then after that -- after I always
6    rejected him he started reprimanding me and he started
7    hitting me and being against me, interfering with my
8    job.   One day I was cleaning and he just came and
9    started yelling at me.   He said not to use the vacuum
10   cleaner and to use a different machine.   So I told him
11   that that was not good for the carpets, that's why we
12:01:58  12   were not using it, but he said that we should use
13   vacuum cleaner and not the other machine even though
14   it was not working and he wanted us to do the job.   He
15   wanted us to do the job.
16             MS. KHADER:   I believe she said the word
17   "represalias" there that you interpreted as reprimand.
18   Do you agree that retaliate is another accurate
12:02:26  19   interpretation of that word?
20             THE INTERPRETER:   Yes, yes, counsel that
21   would be another word that we could use for that.
22             MS. KHADER:   Okay.   Thank you.
23       Q.   (BY MS. PIERRE-LOUIS)   I just want to make
24   sure I understood the testimony correctly.   Did you
25   state that you told Jose that Jorge hit you?

Maria Marquez - March 2, 2022

| | |
|---|---|
| 12:03:54 | 1 |

A.  No.  After I finish with that car, then
another truck arrived and I was going to start drying
it and Jorge wouldn't let me to do that because he
12:03:57  didn't want me to get a tip.  And what helped us were
the tips and that was the agreement I had with Jose.
So he would prevent me from getting tips on that
truck.  So he sent me to clean the offices even though
we had already cleaned the offices in the morning.

And I told him -- I told him -- I asked
him to let me clean that truck and then I would clean
12:04:57  the offices and he said that, no, if I didn't want to
do it right now, right away, that I could home.  And I
said why are you sending me home?  And he said, if you
don't want to do it I will punch you out of work and
then you won't get paid the hours that you worked.  So
he sent me home and he was retaliating me.

MS. GIBSON:  I'm going to object to the
nonresponsive.

Q.  (BY MS. PIERRE-LOUIS)  That wasn't my
12:05:28  question.  My question was, I believe I heard the
interpreter say that you testified that Mr. -- I'm
sorry -- Jorge hit you.  Is that correct or incorrect?

A.  No.

12:05:57  MS. GIBSON:  Object to form.  Object to
the instruction.  She already answered it.

Maria Marquez - March 2, 2022

1          THE INTERPRETER:  Counsel, Kristina, if
2     you could address to the witness herself because
3     sometimes you address to me when I start the
4     questions.
5          MS. PIERRE-LOUIS:  I'm sorry.
6          THE INTERPRETER:  Thank you.
7          MS. GIBSON:  Kristina, also it's 12:06.
8     Just whenever you get to a good stopping point if we
12:06:29  9  could break for lunch.
10         MS. PIERRE-LOUIS:  Sure.  I have about
11    five more minutes.
12         MS. GIBSON:  Okay.  Sure.
13     Q.  (BY MS. PIERRE-LOUIS)  I'll ask my question
14    again.  Did you testify just now that Jorge hit you
15    while you were employed at The Car Wash Zone?
12:07:29  16     A.  Jorge did not hit me.  I just said that he
17    had retaliated against me by not letting me get tips
18    because that was the agreement I had with Jorge.
19     Q.  Okay.  When you say that Jorge retaliated
20    against you by not giving you tips, how many times did
12:07:58  21  this happen?
22         MS. GIBSON:  Object to form.
12:08:09  23         You can answer.
24     A.  On that day he just came to us and started
12:08:58  25  yelling at us, humiliating us.  It was myself and Iris

Maria Marquez - March 2, 2022

who were both cleaning the cars.  On that day, he
wouldn't let me get tips and he sent me to clean the
offices.  He wouldn't let me do my job.  He wouldn't
let me do my job.  He just wanted -- which would be
cleaning cars.  And because he knew we would get tips
from that.  So he just -- he didn't want me to get

12:09:29   tips.  So he just wanted me to be cleaning the
offices.  And on that day he sent me to clean the
offices twice.

Q.  (BY MS. PIERRE-LOUIS)  And when you say on
that day, do you just mean October 20th, 2018 or on or
around that date?

A.  Yes.

12:09:57   Q.  Were there any other days that you alleged
that Jorge retaliated against you?

12:10:47   A.  It was like for three days that he would send
us to do something.  He would use like some words that

12:10:56   are very strong, would talk strongly to us using the
language that you should not use to employees and you
should not treat people like that.  We all deserve
respect.

Q.  It is your testimony that the only time he
withheld tips from you was on October 20th, 2018?

12:11:39   A.  Yes, that was the first time that happened.

MS. PIERRE-LOUIS:  I think that's a good

Maria Marquez - March 2, 2022

```
        1    stopping point.
        2              (Recess 12:11 to 1:00.)
        3         Q.  (BY MS. PIERRE-LOUIS)  Ms. Marquez, I wanted
        4    to begin where we left off before lunch break.  You
13:00:58 5   testified that Jorge retaliated against you by
        6    withholding tips; is that correct?
13:01:33 7        A.  Yes.
        8         Q.  And it's correct that this allegation
        9    occurred before you reported Jorge's behavior to Jose
       10    on October 20th, 2018, correct?
       11              MS. GIBSON:  Object to form, but you can
       12    answer.
13:01:52 13       A.  It is not an allegation.  It is the truth on
       14    how things happened.
       15              MS. PIERRE-LOUIS:  Objection to the
       16    nonresponsive.  That was not my question.
       17        Q.  (BY MS. PIERRE-LOUIS)  My question is, the
       18    retaliation that you claim of Jorge withholding tips
       19    you did not tell Jose about that until October 20th,
13:02:27 20   2018; is that correct?
13:03:03 21       A.  Yes.  On that day, Jose was not at work so I
       22    texted him explaining everything that had happened,
       23    and he said that we would talk on the next day because
13:03:20 24   he was not at work on that day.
       25        Q.  And your testimony is that on October 20th,
```

Maria Marquez - March 2, 2022

1  2018 you called Jose or you texted Jose?

2      A.  I texted him.  I called him and he didn't

3  pick up so I sent him texts.

4      Q.  And those text messages, did you give those

13:04:00  5  text messages to your attorneys?

6      A.  No.

7      Q.  All right.  And then you allege that on

8  October 21st, 2018 you met in person with Jose; is

9  that correct?

13:04:35  10      A.  Yes.

11      Q.  And it was during this meeting that you told

12  Jose about Jorge's behavior towards you, correct?

13      A.  Yes.

13:04:56  14      Q.  And the text message that you sent him on

15  October 20th, what did that text message say?

13:05:04  16      A.  It explained the whole situation, how this

17  began, sexual harassment all of the times he hug me,

18  the times when he would put his hands on my shoulder

19  and when he was behind me with his erect penis and

13:05:58  20  explaining the situation when he sent me home as well.

21      Q.  Do you still have this text message that you

22  sent to Jose?

23      A.  No, I do not have them because I don't have

24  my phone anymore, and I was not able to recover those

13:06:26  25  text messages.  I don't know if Jose still has them or

Maria Marquez - March 2, 2022

1    not.  I don't know.

2              MS. PIERRE-LOUIS:  Objection to the

3    nonresponsive portion.

4        Q.  (BY MS. PIERRE-LOUIS)  Okay.  So after you

5    sent the text message to Jose, it's correct that Jose

6    told you to meet with him on October 21st, correct?

7        A.  Yes, that is correct.

8        Q.  And when you met with Jose in person on

9    October 21st, did you tell him what -- the same thing

10   that you told him in the text message or was there

11   something different?

12       A.  I explained everything that I said on the

13   text messages, everything about the harassment from

14   Jorge towards myself.  The reason why he sent me home

15   he was withholding tips and also the two occasions

16   when he sent me to the clean the offices, the time

17   when he was behind of me with his erect penis was on

18   two occasions and when he said that, see what you do

19   to me.  And when I was saying all of this to Jose he

20   just laughed and he said that he wouldn't do anything

21   about it.  That he would not remove Jorge from his job

22   position and if I wanted to continue working, it had

23   to be under Jorge's orders and if not I could just

24   leave.

25             MS. PIERRE-LOUIS:  I'm also going to

Maria Marquez - March 2, 2022

1  object to the nonresponsive portions of that

2  testimony.

3       Q.  (BY MS. PIERRE-LOUIS)  On October 21st, 2018

4  you resigned, correct?

13:10:27 5       A.  I decided to leave because my life was at

6  risk.  I was the victim of sexual harassment and they

7  were not doing anything to resolve that issue.  And

8  they even put me under the orders of Jorge who was the

9  one committing the sexual harassment.  So I decided to

10  leave because this person is dangerous.  He is evil

11  minded and that's why I decided to leave because my

13:10:56 12  life was at risk being under the orders of harassing

13  person.

14            MS. PIERRE-LOUIS:  Objecting to the

15  nonresponsive portion of that testimony.

16       Q.  (BY MS. PIERRE-LOUIS)  Ms. Marquez, nobody

17  fired you, correct?

13:11:41 18       A.  Nobody fired me, but on the other hand nobody

19  did anything to resolve this issue of what was

20  happening to me.  So I didn't want to leave.  I wanted

21  to continue working there, but I had to leave because

22  my life was at risk.

23            MS. PIERRE-LOUIS:  Objection to the

13:11:58 24  nonresponsive portion of that testimony.

13:12:51 25       Q.  (BY MS. PIERRE-LOUIS)  So you stated that

Maria Marquez - March 2, 2022

1  nobody asked you to leave, nobody fired you, you
2  decided to leave?  That's correct?

3      A.  Because Jose had put me under the orders of
13:12:59 4  Jorge who is the harassing person who is doing a lot
5  of damage to myself.  He was harassing me at all times
6  and I was afraid that he would take retaliation
7  against me so I decided to leave.  Nobody fired me,
8  but I decided to leave because Jorge had put me under
9  the orders of Jorge who is the harassing person who is
10  doing a lot of damage to myself.  He was harassing me
11  at all times and I was afraid that he would take
12  retaliation against me so I decided to leave.  Nobody
13  fired me, but I decided to leave not because I wanted
14  to leave, but I had to.

15              MS. PIERRE-LOUIS:  I'm also going to
16  object to the nonresponsive portions of that
17  testimony.

13:13:31 18      Q.  (BY MS. PIERRE-LOUIS)  Okay.  So your last
19  day at The Car Wash Zone was on or about October 21st,
20  2018, correct?

13:13:54 21      A.  Yes.  20th of October because on the 21st I
22  spoke with Jose and that day I didn't work anymore.

23      Q.  So October 21st, 2018 is the day she quit --
24  I'm sorry, Ms. Marquez, October 21st, 2018 was the day
25  she quit, correct?

Maria Marquez - March 2, 2022

| | |
|---|---|
| 13:14:47 | 1 |

A.   No, I did not quit.   I decided to leave
because Jose told me if I wanted to continue working
13:15:00   3  there it had to be under Jorge's orders.   And if I
wanted to continue and I didn't like that then I could
leave.   That's why I decided to leave.

6              MS. PIERRE-LOUIS:   Object to the
7  nonresponsive portions of that testimony.
8      Q.   (BY MS. PIERRE-LOUIS)   So your last day
9  associating with The Car Wash Zone was October 21st,
10  2018, correct?

13:16:06  11      A.   I worked up to that day because I didn't feel
12  good anymore.   I was the victim of sexual harassment,
13  and it's not -- I didn't want to quit my job.   I
14  didn't want to leave, but due to the circumstances and
15  the fact that they were not doing anything to solve
16  the issue I decided to leave.

13:16:30  17              MS. PIERRE-LOUIS:   Objection,
18  nonresponsive.   That was not my question.
19      Q.   (BY MS. PIERRE-LOUIS)   My question is --
20  okay.   I'll ask it very simply.
21              What was your last day of employment with
22  The Car Wash Zone?

13:16:58  23      A.   The 20th of October.
24      Q.   Okay.
25              MS. GIBSON:   And, Kristina, I mean, I'm

Maria Marquez - March 2, 2022

```
 1   just trying to help.  I think she was trying to
 2   distinguish just between, like, the last day she was
 3   physically working versus just coming into to talk to
 4   Jose on the 21st.
 5                   MS. PIERRE-LOUIS:  Okay.
 6                   MS. GIBSON:  I just feel like that's
 7   where y'all were getting crossways.  Anyway...
13:17:29  8        Q.  (BY MS. PIERRE-LOUIS)  Sorry.  Just give me
 9   one second.
10                   It's correct that you resigned for
11   whatever reason before The Car Wash Zone could conduct
12   an investigation into your allegations, correct?
13:19:39  13       A.  I did not resign.  I had to.  It's not that I
14   resigned because I wanted to.  They forced me to leave
15   because my life was at risk.  They had time to solve
16   the problem and they didn't do anything.  They didn't
17   believe in me they even laughed at me and they didn't
13:19:58  18  believe me.  Jose told me that he was not going to do
19   anything and that he was not going to fire Jorge.  He
20   was not going to remove him from his position.  If I
21   wanted to continue working with him, he would be my
22   supervisor, and if I didn't want to, I could leave.
23   They had time to do something.  They didn't do
24   anything.  Still they haven't done anything.  They
25   didn't believe my testimony.  They even called me a
```

Maria Marquez - March 2, 2022

1    liar.

13:20:29  2            MS. PIERRE-LOUIS:  Objection,

3    nonresponsive.

4        Q.  (BY MS. PIERRE-LOUIS)  That was not my

5    question.  I asked you, Ms. Marquez, you left Car Wash

13:20:38  6    Zone before Car Wash Zone could do an investigation?

7            MS. GIBSON:  Object to form, but you can

13:21:09  8    answer.

9        A.  They didn't believe me back then that Jorge

10   was behind me with an erect penis.  They didn't

13:22:27  11  believe me.  They mocked me.  Jose even laughed at me

12   and thought it was funny.  He didn't do anything at

13   that time and so they wouldn't do anything.  They have

14   not done anything so far.  They had a lot of time to

15   solve this issue.  They didn't want to do anything.

16   That's the reason why I decided to leave because my

17   life was at risk.  Jose would have told Jorge what I

18   said and Jorge would have retaliated against me.  He

19   was -- he is a dangerous person.  He was a gang

13:22:59  20  member.  He has no brains, and he is capable of

21   hurting people, even killing other people.  They a lot

22   of time to do something.  They didn't do anything up

23   to this day.

24           MS. PIERRE-LOUIS:  Objection,

25   nonresponsive.

Maria Marquez - March 2, 2022

1    Q.  (BY MS. PIERRE-LOUIS)  You've already
2    testified, Ms. Marquez, that your last day working at
3    The Car Wash Zone was October 20th, 2018; is that
4    correct?
13:23:49  5    A.  Yes, I worked there until that day.
6    Q.  So you don't know what happened at The Car
13:23:58  7    Wash Zone after you stopped working there; is that
8    correct?
13:24:42  9    A.  Obviously I don't know what they did, but in
10   my case they didn't do anything.  They didn't believe
11   what I told them.  They have a criminal there and they
12   are defending a person who is capable of committing
13:24:58  13  any sort of crime, even hurting other people.  Up to
14   this date, they haven't resolved the issue.
15          MS. PIERRE-LOUIS:  I'm going to object to
16   the nonresponsive portions of that testimony.
17    Q.  (BY MS. PIERRE-LOUIS)  So you testified you
18   don't know what happened at The Car Wash Zone after
19   your last day of working there, correct?
13:25:44  20   A.  I don't know what happened at that place
21   because I was not there anymore.  I was not being
22   harassed by anyone anymore.  I don't know what
23   happened at that job.
24          MS. PIERRE-LOUIS:  I'm objecting to the
13:25:56  25  nonresponsive portions of that testimony.

Maria Marquez - March 2, 2022

1    Q.   (BY MS. PIERRE-LOUIS)   You previously
2    testified that Car Wash Zone had a long time to do
3    something about Jorge after you reported the
4    harassment of Jorge, however your last day was the
13:26:22  5    same day you reported that harassment; is that
6    correct?
7                    MS. GIBSON:   Object to form, but you can
13:26:52  8    answer.
9         A.   The last day when I left it was because my
13:27:27  10   life was at risk.   I was working at the same location
11   of the person who was harassing me.   I was the victim.
12   I didn't receive any support.   They didn't do anything
13   back then and up to this date they haven't done
14   anything.
15                    MS. PIERRE-LOUIS:   Objection,
13:27:56  16   nonresponsive.
17        A.   They are providing -- giving credibility to
18   Jorge, a guy who was one step to rape, and they didn't
19   do anything to solve the problem.   They are giving
20   credibility to a guy like that, to Jorge.
21                    MS. PIERRE-LOUIS:   Objection,
22   nonresponsive.
13:28:29  23                    I think we should take a little break.
24   Five minutes?
25                    MS. GIBSON:   Sure.   Before we go off the

Maria Marquez - March 2, 2022

1   record, Kristina, I think some of the confusion here
2   is she does know what y'all did after work because she
3   has seen what you've said to the EEOC or she at least
4   knows what they claim.
5               MS. PIERRE-LOUIS:  I was going to get to
6   that, but, I mean, she said the day that she quit they
7   laughed at her.
8               MS. GIBSON:  That's true.
9               MS. PIERRE-LOUIS:  But then she said they
13:28:58 10  had all this time to do something, but she quit so how
11  does she know what they did.
12              MS. GIBSON:  Because she knows what y'all
13  told the EEOC.  That's where all this stuff is coming
14  from about they haven't done anything through today.
15  I just think that's where y'all are getting a
16  disconnect.
17              MS. PIERRE-LOUIS:  Okay.
18              MS. GIBSON:  So, yeah, she knows what
19  y'all claim to have done.
20              MS. PIERRE-LOUIS:  Okay.
21              MS. GIBSON:  So that's where they've had
22  a long time and they've done nothing to this day,
13:29:25 23  that's where that's coming from.
24              MS. PIERRE-LOUIS:  Okay.
25              MS. GIBSON:  Take a break, five minutes?

Maria Marquez - March 2, 2022

1   Car Wash's Zone's investigate found, you can't say
2   today that The Car Wash Zone did not conduct an
13:44:45   3   investigation into your allegations; is that correct?
4       A.   At that time, they had an enough time to
13:46:25   5   solve the problem and they didn't solve it.  I think
6   that there is no company who would like to have
7   someone like that with them, the person who has been
8   accused of sexual harassment.  I think that there is
9   no company who would like to have someone like that
10   with them with that kind of background, and they are
11   continuing protecting him, defending Jorge.  When he
12   did this harassment towards me, he physically touched
13:46:58   13   me and he damaged me emotionally because that's
14   humiliating.  It is terrible to be a victim of sexual
15   harassment.  And they haven't -- they are not
16   believing in my words, my testimony.  They are not
17   giving any merit to them and even though this guy
18   Jorge is a dangerous person.
19           MS. PIERRE-LOUIS:  Objection,
20   nonresponsive.
13:47:26   21           I think we need to take another break.
13:47:31   22   Amy, can I talk to you?
23           MS. GIBSON:  Yeah.  Do you want to go off
24   the record or on the record?
25           MS. PIERRE-LOUIS:  Off the record.

Maria Marquez - March 2, 2022

1    anything.

2              MS. PIERRE-LOUIS:  Objection,

3    nonresponsive.

4        Q.  (BY MS. PIERRE-LOUIS)  My question is, do you

5    have personal knowledge, you yourself know, what The

6    Car Wash Zone did after you left The Car Wash Zone?

7              MS. GIBSON:  Object to instructing the

8    witness incorrectly.  Object to form of the question.

14:20:16   9              You can answer.

10       A.  At the time I report that Jorge was doing,

11   that he was a sexual harasser, Jose said that he was

12   not going to do anything.  At that time, he did not

13   remove him from his job.  He was not removed from the

14:21:28  14   company.  He said that if I wanted to continue working

15   there, it would be under Jorge's orders.  If not I

16   could leave.  So I decided to leave and so far they

17   haven't done anything on my case and they have

18   believed a criminal like him and they haven't done

19   anything to solve the sexual harassment being me the

14:21:57  20   victim of that sexual harassment by Jorge.

21       Q.  (BY MS. PIERRE-LOUIS)  All right.  Ms.

22   Marquez, so you allege you know they didn't do

23   anything, but you've also testified that you stopped

24   working there October 20th.  So what's the basis for

25   your personal knowledge that you actually know that

Maria Marquez - March 2, 2022

```
         1   they didn't investigate, they didn't do anything after
         2   you already admit that you stopped working there?
         3   What's the basis for your personal knowledge to say
14:22:24 4   that?
         5             MS. GIBSON:  Object to the form of the
14:22:56 6   question.  Object to counsel inserting affirmative
14:23:00 7   statements before the question.  You can answer.
         8        A.  I never said that I don't know what they did.
         9   What I know is what I experienced personally, but the
14:24:30 10  truth my testimony I know what Jose told me.  When I
        11   decided to leave, he laughed at me.  When I reported
        12   Jorge's sexual harassment of him having his penis
        13   hard, he laughed at me.  He mocked at my testimony, at
        14   myself.  It was humiliating.  At that time, they
14:24:56 15  didn't do anything.  Up to this day they haven't done
        16   anything otherwise we wouldn't be here still arguing
        17   on whether he is a dangerous person or not.  They
        18   haven't done anything up to today.
        19             MS. PIERRE-LOUIS:  Objection,
        20   nonresponsive.
        21        Q.  (BY MS. PIERRE-LOUIS)  I want to shift to
        22   talking about some of the discovery requests
        23   defendants had in this lawsuit.  Give me a second.
14:25:28 24  I'm going to share my screen once I get this up.
        25             MS. GIBSON:  By the way, Kristina, I
```

Maria Marquez - March 2, 2022

```
           1   instruction -- the attorney's instruction was about
           2   the workplace.
           3                 THE WITNESS:  Okay.
14:53:00   4        Q.  (BY MS. PIERRE-LOUIS)  I just want to
           5   clarify.  After you left The Car Wash Zone, you were
           6   employed as an electrician; is that correct?
14:53:29   7        A.  After I left Car Wash Zone, I entered and
           8   started working at a stadium.  Once I left the stadium
           9   because they closed because of the pandemic, I started
14:53:55  10   working as an electrician.
          11        Q.  I'm not asking where you work currently, but
          12   are you currently employed as an electrician?
          13        A.  Yes, I am working as an electrician.
          14        Q.  Are you working there full time or part time?
          15        A.  Full time.
14:54:46  16        Q.  Give me one second.
          17        A.  Yes.
          18        Q.  I wanted to discuss the damages alleged in
14:54:57  19   this case.  For any sort of mental anguish damages, do
          20   you have any medical records or therapist records
14:55:15  21   regarding that?
          22        A.  I hold on to the church and to God.  I ask
          23   God for help with these mental damages, the emotional
          24   damages.  And also I -- what I have done is I go out
          25   to walk on the parks to feel better.  I also protected
```

Maria Marquez - March 2, 2022

1   myself with my children to be able to live alone

14:56:56   2   despite the damages of the sexual harassment.   I tried

3   to be a better person to heal the pain and I hold on

4   to God to alleviate the pain.

5               MS. GIBSON:  Are you done?

6               THE WITNESS:  Yes.

7               MS. GIBSON:   That's fair for therapist.

14:57:24   8   We don't have any formal medical therapist, therapy,

9   or physician records.

10              MS. PIERRE-LOUIS:  And just to clarify,

11   there is no lost wages being claimed in this case,

12   correct?

13              MS. GIBSON:  Is someone asking me?  That

14   is true.  I didn't see where that came from.

15              MS. PIERRE-LOUIS:  Sorry.  That was from

16   me.

17              MS. GIBSON:  Are you asking me?  That's

18   correct.  No back pay, no front pay claims.

19              MS. PIERRE-LOUIS:  Can we take another

20   ten-minute break?

21              MS. GIBSON:  Sure.

15:07:11   22              MS. PIERRE-LOUIS:  Thank you.

23              (Recess 2:58 to 3:09.)

24      Q.  (BY MS. PIERRE-LOUIS)  I know it has been a

25   long day.  I just have a little bit left.

Maria Marquez - March 2, 2022

```
         1   avoid me having to take a break.
15:17:39 2                    MS. PIERRE-LOUIS:  Sure.
         3                    MS. GIBSON:  Thanks.
         4                    (Recess 3:17 to 3:34.)
         5        Q.  (BY MS. PIERRE-LOUIS)  Ms. Marquez, you
         6   previously stated that you were going to church to
         7   deal with the harassment that you faced from Jorge
         8   Trejo; is that correct?
15:34:13 9        A.  Yes, to alleviate the pain, the suffering
        10   that all of a that caused, the damage, psychological
15:34:21 11  damage that all of it had caused.
        12        Q.  Did you speak to anybody specifically at your
        13   church about Jorge Trejo?
        14        A.  No.
15:34:58 15                   MS. PIERRE-LOUIS:  And, Amy, I wanted to
        16   go back to the text messages.  The first one you said
        17   is between Maria and Raquel and on the record you're
        18   stating that you're withholding that text message
        19   based on work product; is that correct?
        20                    MS. GIBSON:  I mean, that's the fact, but
        21   I don't know that it was responsive to your requests
        22   so...
        23                    MS. PIERRE-LOUIS:  Okay.
15:35:29 24                   MS. GIBSON:  So when you say withholding,
        25   yeah, it's true we are.  It's true we're claiming work
```

Maria Marquez - March 2, 2022

15:37:00

1  there's no agreement on that, we would have to go item

2  by item on what you all actually requested.

3              MS. PIERRE-LOUIS:  Okay.  I pass the

4  witness, but reserve my right to redepose based on

5  instructions not to answer, withholding of any

6  evidence, and nonresponsive testimony given today.

7                      EXAMINATION

8  BY MS. GIBSON:

15:37:50

9      Q.  So I have some questions for you, Maria.

10     A.  Okay.

11     Q.  Just so you know, I disagree when Kristina

12  says you are being nonresponsive.

13     A.  Okay.

14     Q.  What department or area did Car Wash Zone

15  have Jorge manage?

16             MS. PIERRE-LOUIS:  Objection, form.

15:37:51

17     A.  The details area where I was working at.

18             MS. PIERRE-LOUIS:  Audra, I just want to

19  make sure that my objection to form was taken down.

20             THE REPORTER:  Yes.

21             MS. PIERRE-LOUIS:  Thank you.

22     Q.  (BY MS. GIBSON)  How was The Car Wash Zone

15:38:58

23  divided as far as departments?  How many departments

24  were there?

25             MS. PIERRE-LOUIS:  Objection, form.

Maria Marquez - March 2, 2022

| | | |
|---|---|---|
| 15:40:18 | 1 | A.  There was -- in front there were the offices, |
| | 2 | in the middle there was the tunnel where the car wash |
| | 3 | was done, and then to the right there were the |
| 15:40:28 | 4 | cashiers where they collected the money and where the |
| | 5 | clients came in.  That's where Brian and Jorge were |
| | 6 | working at the beginning when they joined the company. |
| | 7 | And to the left there was my department, details of |
| | 8 | the cars, and the drying and shining of tires.  And |
| | 9 | then a little bit further to the front end, there was |
| | 10 | a room where the clients waited for their cars and |
| 15:40:57 | 11 | there was another room where we used to eat.  And in |
| | 12 | the middle of the entire building, there was another |
| | 13 | room where they had the chemicals and the laundry |
| 15:41:23 | 14 | room.  It was a very enclosed room. |
| | 15 | Q.  (BY MS. GIBSON)  I know you said Jorge was |
| | 16 | manager over the entire car detail department.  Were |
| | 17 | there any other managers at his level present at The |
| 15:42:18 | 18 | Car Wash Zone? |
| | 19 | MS. PIERRE-LOUIS:  Objection, form. |
| | 20 | A.  There was Jose as well.  He was the general |
| | 21 | manager, but he was not with us.  The one who was with |
| | 22 | us all the time was Jorge.  Jose was only in the |
| | 23 | offices or outside the building, outside the work |
| 15:42:37 | 24 | site. |
| | 25 | Q.  (BY MS. GIBSON)  Although your job duties did |

Maria Marquez - March 2, 2022

1    not change while you were there, Jorge could order you

2    to do different duties; is that right?

3                    MS. PIERRE-LOUIS:  Objection, form.

15:43:00  4    Objection, leading.

15:43:58  5         A.  Yes, Jorge will send me to clean the offices

6    several times a day.  The last day -- on the last day

7    he sent me twice to clean the offices so that I

8    wouldn't get the tips because when I joined this kind

9    of work, Jose told me that the pay was not that much,

10   but the tips helped.  And it was that -- a very

15:44:26  11   wealthy area so payment will not -- was not that much,

12   but tips helped.

13                    The dump, the place where we used to dump

14   the trash was far away from the details location.  So

15   sometimes we had to stay till 8:00 with Jorge and

16   Brian and he would take advantage of that opportunity

17   when I went to dump the trash so that he could be

18   alone with me.

19        Q.  (BY MS. GIBSON)  So if I understood you

15:45:25  20   correctly, Jorge could cut your take-home pay because

21   he could deprive you of tip opportunities?

22                    MS. PIERRE-LOUIS:  Objection, form.

15:45:39  23   Objection, leading.

24        A.  Yes, he cut my tips off by sending me to do

15:46:28  25   something else that was not detail, that was not car

Maria Marquez - March 2, 2022

1  related because the owners of the cars were the ones

2  that would give us the tips.  So he would send me to

3  do something else so I wouldn't get the tips.

4      Q.  (BY MS. GIBSON)  Did Jorge order any men to

5  go clean the office?

6              MS. PIERRE-LOUIS:  Objection, form.

15:46:59  7              MS. GIBSON:  Wait.  Wait.  Wait.  Basis?

8              MS. PIERRE-LOUIS:  Irrelevant.

9              MS. GIBSON:  Okay.  That's not a form

10  objection, but okay.

15:47:11  11              All right.  Go ahead.

12      A.  No, he did not send any male.  He would

13  always send females to clean the offices, Raquel,

14  Iris, myself.  It was the three of us who would clean

15  the offices.  On that occasion, I was cleaning a car

15:48:28  16  and was drying it and he said to stop doing that, he

17  wouldn't let me do that.  He -- because he didn't want

18  me to get the tips so he ordered me to go clean the

19  office.  And I said I would go and do that, clean the

20  office, but to please let me dry the car.  He said,

21  no, you are not going to dry the car.  You go and

22  clean the offices.  He didn't want me to get the tips.

23  So -- and he said if you don't want to do that, then

15:48:57  24  you can go home.

25      Q.  (BY MS. GIBSON)  Did you find -- let me start

Maria Marquez - March 2, 2022

1   over.

2                   At The Car Wash Zone, which job was

3   considered demeaning at all, recleaning an office that

4   had already been cleaned or detailing cars?

15:49:28   5                   MS. PIERRE-LOUIS:   Objection, form.

6        A.   I was hired to do detailing on the cars, to

7   clean them, because I was hired to do that job to

8   clean and detail the cars.

9        Q.   (BY MS. GIBSON)   Maria, do you know what

10   demeaning means?

15:50:31   11        A.   Yes.

12        Q.   At The Car Wash Zone, was it demeaning to

13   assign the women or punish the women to clean the

14   office?

15                   MS. PIERRE-LOUIS:   Objection form.

15:51:26   16        A.   Yes, because we -- yes, because we were -- I

17   don't know why they only put women to clean the

15:51:56   18   office.   It was -- I don't know.   There is a word for

19   that.   I don't know.   I'm sorry.   But, yes, they only

20   made women clean the offices I think because it was

21   discriminating against women.   I don't know why men

22   would not clean the offices.

23        Q.   (BY MS. GIBSON)   Okay.   When you say degrade,

24   do you mean degrading?

25                   MS. PIERRE-LOUIS:   Object to the form.

Maria Marquez - March 2, 2022

| | | |
|---|---|---|
| 15:52:29 | 1 | A.  Yes. |
| | 2 | Q.  (BY MS. GIBSON)  All right.  Who was it that |
| | 3 | told you you had to following Jorge's orders? |
| | 4 | MS. PIERRE-LOUIS:  Object to the form of |
| | 5 | the question. |
| 15:52:57 | 6 | A.  Jose said that I had to be under Jorge's |
| | 7 | orders. |
| | 8 | Q.  (BY MS. GIBSON)  At the time you reported |
| | 9 | sexual harassment and retaliation to Jose, had the |
| | 10 | harassment become severe? |
| 15:53:13 | 11 | MS. PIERRE-LOUIS:  Objection, form. |
| | 12 | A.  Yes, it got even worse when he was assigned |
| 15:54:00 | 13 | manager of that area because he was all the time |
| | 14 | looking at us at the work area.  And that's when this |
| | 15 | incident happened when he was behind me while I was |
| | 16 | cleaning the car with an erect penis and he said look |
| | 17 | what you do to me so that I would turn around and see |
| 15:54:19 | 18 | his penis.  Well, besides it got worse.  When I |
| | 19 | reported it to Jose, he said that I was going to |
| | 20 | continue working under Jorge's orders. |
| | 21 | Q.  (BY MS. GIBSON)  Am I correct that you |
| 15:54:58 | 22 | previously described at this point one step before |
| | 23 | rape, right? |
| | 24 | MS. PIERRE-LOUIS:  Objection, form, |
| | 25 | leading. |

Maria Marquez - March 2, 2022

15:55:41  1        A.  Yes, because that was a sexual harassment,
         2    one step before rape and it was something to be
         3    punished.  It is not possible that you are defending a
15:55:59  4    person, A person that was very close to rape.
         5        Q.  (BY MS. GIBSON)  Did you ever have to stay at
         6    work with Jorge so late that it was dark outside?
         7             MS. PIERRE-LOUIS:  Objection, form.
15:57:05  8        A.  Yes, on occasions we have to stay, Rachel,
         9    Iris, and myself with Jorge until 11 -- sorry, 8:00
        10    p.m.  And there were some rooms that were really
        11    enclosed, and we were scared of being alone only the
        12    three of us.  Sometimes -- I mean always we had to go
15:57:28 13    and dump the trash that was far away and dark.  So he
        14    would have used retaliation against me and everything
        15    would have gotten worse.
        16        Q.  (BY MS. GIBSON)  Had Jorge tried to approach
        17    you in those isolated areas like the trash area
        18    before?
15:57:48 19             MS. PIERRE-LOUIS:  Objection, form.
        20        A.  Yes, always.  It was -- he would take
        21    advantage of those places to approach me, to try to
        22    hug me in these kind of areas where we dump the trash,
        23    the place where we eat, the dining room, the tunnel
        24    where we did the car wash and the room that was very
        25    dark with the chemicals and also at the trash area,

Maria Marquez - March 2, 2022

15:59:00  1  that place.  He used those places to try to approach
2  me at all times.
3       Q.  (BY MS. GIBSON)  And as far as muscles -- as
4  far as muscles go, who was stronger, you or Jorge?
5            MS. PIERRE-LOUIS:  Objection, form.
6            MS. GIBSON:  I'm sorry.  Wait.
7            Basis?
8            MS. PIERRE-LOUIS:  It is ambiguous.  Who
9  is stronger?
10            MS. GIBSON:  As far as muscles, yeah.
11            MS. PIERRE-LOUIS:  Objection to the form
12  of the question.
15:59:29  13            MS. GIBSON:  Is that your only basis,
14  ambiguous?
15            MS. PIERRE-LOUIS:  Yes.
15:59:34  16       Q.  (BY MS. GIBSON)  Okay.  You can go ahead.
17       A.  Well, Jorge is stronger because, well, he's a
18  man and men are always stronger than women.  That's
16:00:27  19  obvious and logic, but besides that, he by being a
20  gang member in El Salvador, he had the habits and
21  dangerous and capable of hurting people to the point
22  of rape and killing.  He was stronger than me.
16:01:11  23       Q.  Roughly how often did some sexual harassment
24  happen at Car Wash Zone?  As far as once a month, once
16:01:18  25  a week?  How often?

Maria Marquez - March 2, 2022

1            MS. PIERRE-LOUIS:  Objection, form.

2       A.  It was the five days of the week he tried to

3    hug me, two to three times a day, almost every day.

4    It was frequent, frequent harassment, and he would try

5    to use any opportunity when I was alone to try to hug

6    me.

7       Q.  (BY MS. GIBSON)  And then did Jorge's conduct

8    get worse over time?

16:02:29  9            MS. PIERRE-LOUIS:  Objection, form.

16:03:38 10       A.  It was -- well, Jorge's conduct got worse.

11   After that the retaliations against me began, and it

12   got worse when he became our boss because he was able

13   to be closer to us at all times.  And it got worse

16:03:58 14   because he felt that he had the power to harass us and

15   to be freely around us all the times in the details

16   area.  So it got worse to the point that one day when

17   I was cleaning I was bending to clean the car, he came

18   behind me with an erect penis and he told me, see what

19   you do to me because he wanted me to turn around and

20   see his erectness.  It was disgusting because you

16:04:29 21   could really see his penis through his pants.  It got

22   so bad, so worse, that it was one step before becoming

23   a rape.

24       Q.  (BY MS. GIBSON)  Did the sexual harassment

25   interfere with your ability to do your car wash job?

Maria Marquez - March 2, 2022

1              MS. PIERRE-LOUIS:  Objection, form.

16:05:37  2      A.  Yes, it interfered with my ability to work

3  because I was not working well.  I was not feeling

4  okay working.  I was scared that one -- at any moment

5  Jorge would come behind me, try to hug me.  My ability

6  to work was not the same as before.  I was in trauma.

16:05:59  7  I was very scared so my work ability was not the same

8  as before.

9      Q.  (BY MS. GIBSON)  Did you do your part to stop

10  Jorge -- wait.  Let me start over.

11              Did you do your part to try to stop Jorge

12  from sexually harassing you?

13              MS. PIERRE-LOUIS:  Objection, form.

16:06:53  14     A.  I did my job, my part, trying to stop Jorge

16:06:58  15  so he wouldn't continue with the sexual harassment,

16  but they did nothing.  I did my part trying to stop

17  Jorge.

18      Q.  (BY MS. GIBSON)  In fact, you had switched

19  jobs once already just to get away from Jorge?

20              MS. PIERRE-LOUIS:  Objection, form.

21  Objection, leading.

16:08:09  22     A.  Exactly.  I had already switched jobs to try

23  to get away from him.  I switched jobs and even though

24  it was farther away from my house, I switched to

25  McKinney Car Wash Zone with Jose.  I decided to switch

Maria Marquez - March 2, 2022

16:08:29   1    jobs because Jorge was always harassing me so I

2    changed jobs to avoid him.  And I didn't expect Jose

3    to bring him to this Car Wash Zone and to have sexual

4    harassment even got worse.

5        Q.  (BY MS. GIBSON)  Did you initially try to

6    distance yourself from Jorge at Car Wash Zone?

16:09:47   7        A.  I always rejected him, tried to distance as

8    far as possible from him whenever I saw him trying to

9    approach to me.  Even I hid myself behind Rachel.

16:09:59  10    When I saw that he was getting too close to me, I

11    tried to distance from him because this man always

12    tried to hug me.  He would ask for hugs and I tried to

13    be as far as way from possible from him at all times

14    to prevent his sexual harassment.

16:10:30  15        Q.  And did you also tell him, Jorge, this

16    manager of your department that this was not okay?

17              MS. PIERRE-LOUIS:  Objection, form.

18    Objection, leading.

16:11:25  19        A.  I told him that what he was doing was not

16:11:28  20    okay and I asked him to stop harassing me, to stop

21    trying to hug me, to stay at a distance from me, but I

22    didn't want to touch him.  I rejected him at all

23    times.  Because of that I started receiving

24    retaliation against me by not letting me get tips and

16:11:59  25    sending me back home.  I did what I had to do to keep

Maria Marquez - March 2, 2022

1    him away from me, but it was pointless.  They didn't

16:12:25  2    do anything.  They didn't believe on my testimony and

3    they didn't solve the problem.

4         Q.  (BY MS. GIBSON)  When you worked at Car Wash

5    Zone, did most of the detailers primarily speak

6    Spanish?

16:12:53  7              MS. PIERRE-LOUIS:  Objection, form.

8         A.  We all spoke Spanish.  Nobody spoke English.

9         Q.  (BY MS. GIBSON)  Did anyone tell you-all in

10   Spanish how to reach the owner if you needed to report

16:13:15 11   sexual harassment?

12              MS. PIERRE-LOUIS:  Objection, form.

13         A.  Nobody told us how to report sexual

14   harassment, and we were not able to communicate with

15   the owner because we didn't speak English so we

16:13:53 16   couldn't communicate with the owner.  The owner would

17   rarely stop by.  If I saw him, maybe was five times

18   throughout the whole time that I was working there.

16:14:27 19   Usually he would drive by in his truck, but we never

20   saw him in person or walking around because Jose had

21   the responsibility of the entire place, of the people

22   there and of everything that happened there.

23         Q.  (BY MS. GIBSON)  Did anyone train you all on

16:14:58 24   sexual harassment?

25         A.  Nobody instructed us or trained us on sexual

Maria Marquez - March 2, 2022

1   harassment even though it's very delicate and should
2   not be happening at your work site.  If you want to do
3   your job right, you shouldn't be -- you should be
4   respected.  We all deserve being respected, but nobody
16:15:58 5   instructed us or gave us any instructions on what
6   sexual harassment is.
7         Q.  Did anybody provide The Car Wash Zone's
8   employees with an employee handbook that was in
9   Spanish?
16:16:16 10               MS. PIERRE-LOUIS:  Objection, form.
11         A.  Nobody gave us anything, nobody gave us a
12   handbook, and there were no posters in Spanish
13   regarding sexual harassment.
14         Q.  (BY MS. GIBSON)  Kristina showed you a lot of
15   documents in English today.  Do you -- are you able to
16   read English?
16:16:59 17               MS. PIERRE-LOUIS:  Objection, form.
18         A.  No.
19         Q.  (BY MS. GIBSON)  Did Car Wash Zone do its job
20   to stop Jorge from sexually harassing you and
21   retaliating against you?
16:17:28 22               MS. PIERRE-LOUIS:  Objection, form.
23         A.  They did not do anything.  They did not do
24   anything when I reported Jorge being behind me with
25   his erect penis.  They made fun of me.  They laughed

Maria Marquez - March 2, 2022

1    at me.  They mocked me.  They humiliated me.  They
2    didn't do anything back then, and up to this date they
3    haven't done anything.  They haven't resolved the
4    problem.  They did not do anything.  They did not
5    remove Jorge from his job position, and they told me
16:18:57  6    that if I wanted to continue working there, I should
7    be under the orders of Jorge.  They gave him the
8    credibility.  They did not believe me, but they are
9    still believing on what he said.

10        Q.  (BY MS. GIBSON)  And you know what they did
11    because some of what they said to the EEOC was
12    translated for you, right?

13              MS. PIERRE-LOUIS:  Objection, form.
14    Objection, leading.

16:20:27  15        A.  I know some of what they did and what they
16:20:30  16    said, what they are saying is that what I'm saying is
17    not credible.  They are not believing on what I said.
18    They are even saying that I'm lying.  They are calling
19    me a liar.  That's the response that they gave that my
20    words have no validity as if nothing had happened.
21    They have not solved the problem.  They gave
22    credibility to Jorge.  They believed Jorge more than
16:20:59  23    myself even though I'm the victim of sexual
24    harassment.

25              THE INTERPRETER:  I'm sorry.  The

Maria Marquez - March 2, 2022

```
 1   interpreter needs one minute to get my notebook
 2   because I'm running out of paper.
 3                MS. GIBSON:  Sure.  We'll go off the
 4   record so you can do that.  We'll wait.
 5                THE INTERPRETER:  Thank you.
 6                (Recess 4:20 to 4:23.)
 7       Q.  (BY MS. GIBSON)  Did you know that the only
 8   witness statement that Car Wash Zone came up with was
 9   Jorge?
10                MS. PIERRE-LOUIS:  Objection, form.
11   Objection, leading.
12       A.  Yes, the only statement that I saw was
13   Jorge's.
14       Q.  (BY MS. GIBSON)  Did you know that they
15   haven't produced any camera video footage in this
16   case?
17                MS. PIERRE-LOUIS:  Objection, form.
18                MS. GIBSON:  Can y'all hear me?  Can
19   y'all hear me?
20                MS. PIERRE-LOUIS:  I can hear you.
21                MS. GIBSON:  Because I'm frozen on my
22   end.  I think we're getting some end-of-day
23   interference.
24                MS. PIERRE-LOUIS:  Your video is frozen,
25   but I can hear you okay.
```

16:23:16  (line 7)
16:23:28  (line 9)
16:24:27  (line 21)
16:24:30  (line 22)

Maria Marquez - March 2, 2022

1          MS. GIBSON:  David, will you get the
2    hardwire ethernet so we can hardwire this up?  Sorry
3    about that.
16:24:56  4       Q.  (BY MS. GIBSON)  Did you see that --
5               THE INTERPRETER:  I'm sorry, Counsel.
6    The interpreter would like to translate the answer of
7    the answer.
8               MS. GIBSON:  Oh, I'm sorry.  I didn't --
9    I got confused.  Go ahead.
10       A.  Yes, I knew -- I knew that.
11       Q.  (BY MS. GIBSON)  Okay.  Did you see that Car
16:25:26 12  Wash Zone accused you of screaming profanities at
13   Jorge?
14              MS. PIERRE-LOUIS:  Objection, form.
15   Objection, leading.
16       A.  Yes.
17       Q.  (BY MS. GIBSON)  Did you read Jorge's
18   statement?
19       A.  Yes.
16:25:58 20       Q.  Did you see that he didn't even -- not even
21   Jorge ever said that you screamed profanities at him?
16:26:06 22              MS. PIERRE-LOUIS:  Objection, form.
23       A.  Yes, I saw that he didn't report that I told
24   him these words, inappropriate words, bad words,
25   obscene words.  I saw that he didn't put that on his

Maria Marquez - March 2, 2022

1    report.

2         Q.   (BY MS. GIBSON)   Right.   He only said

16:26:58  3    something like what you said to him was insulting to

4    him?

5              MS. PIERRE-LOUIS:   Objection, form.

16:27:04  6    Objection, leading.

7         A.   Yes, he said that I insulted him when I told

8    him that the vacuum cleaner was not working, that the

9    carpet cleaning machine was not working, and that's

10   why we had to use the vacuum cleaner.   That's what I

11   told him and that's what he said.

12        Q.   (BY MS. GIBSON)   And even during this lawsuit

16:28:00 13   when Car Wash Zone sent you the $redacted settlement

14   offer, what did they call you in that offer?   What did

15   they say about you or your case?

16             MS. PIERRE-LOUIS:   Objection, form.

16:28:14 17   Objection, leading.

18        A.   They called me a liar.   They told me that my

19   words were not credible.   They said that my words had

20   no validity.   They insulted me.   They humiliated me by

21   telling me that my words have no validity and even

22   though I went through all of this, I suffered through

23   all of this.   I was really damaged because of all of

16:29:28 24   this situation.   This is my truth and what I'm saying

16:29:42 25   is the truth of what happened.   I am not making up all

Maria Marquez - March 2, 2022

1    of this story.   Jorge is a dangerous person capable of
2    hurting others.   He sexual harassed me on several
3    locations.
4        Q.   (BY MS. GIBSON)   If Car Wash Zone had been
5    monitoring what was going on in the workplace, would
16:30:29  6    they have known about the harassment?
7              MS. PIERRE-LOUIS:   Objection, form.
16:31:11  8        A.   Yes, of course.   If they would have been
9    looking out after the staff and the people working
10    that they brought to their company to work.   They had
11    cameras all over the car wash.   If they would have
16:31:29 12    monitored the cameras, they would have seen what Jorge
13    was doing, the behavior of Jorge what he was doing to
14    me.   At all times he was harassing me.
15        Q.   (BY MS. GIBSON)   And if they had properly
16    supervised their manager Jorge, would they have known
17    about the harassment and been able to stop it?
18              MS. PIERRE-LOUIS:   Objection, form.
16:32:48 19        A.   If they would have been supervising Jorge,
20    they would have seen his behavior towards me, towards
16:32:56 21    people in this location, towards myself, and they
22    would have known, but even so they are providing
23    credibility to Jorge.   They are not believing what I
24    am saying.   They are not believing on my testimony,
25    and they didn't do anything back then and they are not

Maria Marquez - March 2, 2022

1   doing anything right now.

2        Q.   (BY MS. GIBSON)   On the date you hired your

3   attorneys, I show that the first hire date was

4   actually July of 2019.

16:33:28  5             MS. PIERRE-LOUIS:   Objection, form.

6        A.   Yes.

7        Q.   (BY MS. GIBSON)   Do you think it would be

8   helpful to check the date on your agreement for the

9   correct date?

10             MS. PIERRE-LOUIS:   Objection, form.

16:33:58  11       A.   Yes, it will be okay to check the agreement.

12        Q.   (BY MS. GIBSON)   Car Wash Zone's attorney

13   asked you some questions about our lawsuit filing

14   called a complaint?

15        A.   Yes.

16        Q.   Did you know that the complaint is just a

16:34:30  17   summary of the allegations?

18             MS. PIERRE-LOUIS:   Objection, form.

19        A.   Yes, I know that it is only a summary in a

20   few words of everything that happen.

16:35:00  21        Q.   (BY MS. GIBSON)   Did you know that it is

22   never meant to state every single fact?

23             MS. PIERRE-LOUIS:   Objection, form.

24        A.   Yes.

25        Q.   (BY MS. GIBSON)   At some point did you feel

Maria Marquez - March 2, 2022

1    that conditions were so intolerable at Car Wash Zone

2    that you felt compelled to resign?

16:35:29  3            MS. PIERRE-LOUIS:  Objection, form.

4        A.  My situation at Car Wash Zone forced me to

5    resign.  I didn't want to leave the company, but I was

6    forced due to Jorge's sexual harassment and to the

7    fact that Jose didn't do anything.  He said that he

8    was not going to remove Jorge from his position and

9    that I would continue working under Jorge's orders.

16:37:28 10    So I was forced by that because my life was at risk

11    because I will continue working -- I would have

12    continued working under Jorge's orders or

13    instructions.

14            And Jose said that he will communicate to

15    Jorge the report that I made against him.  So I was

16    scared to continue working there because I had already

16:37:58 17    suffered retaliation from him, and it would have

18    gotten worse if I had stayed working there.  So I

19    didn't want to stay there because I didn't want to

20    continue to wait to be hurt even more.  I had already

21    been hurt so I didn't want to continue being hurt by

22    him.  My life was at risk so that's why I couldn't

23    stay there.

16:38:29 24        Q.  (BY MS. GIBSON)  As far as other victims,

25    didn't an employee come to you and ask about talking

Maria Marquez - March 2, 2022

1  to an attorney because of the way she had been treated
2  there?
16:38:37  3            MS. PIERRE-LOUIS:  Objection, form.
4       A.  Yes, there is someone who doesn't want to
5  speak up because of fear.
6            MS. GIBSON:  Okay.  Pass the witness.  I
7  may have followup if you have additional questions.
8            MS. PIERRE-LOUIS:  I have a few
16:39:16  9  additional questions.
10            THE WITNESS:  Okay.  Can I have one
11  minute?  I need to charge my phone, which is running
12  out of battery.
13            MS. PIERRE-LOUIS:  Do you want to take
14  five minutes?
15            MS. GIBSON:  I think she just needs to
16  hook it up.
16:40:44 17            MS. PIERRE-LOUIS:  Oh, okay.
18            THE WITNESS:  Yes.
19                      EXAMINATION
20  BY MS. PIERRE-LOUIS:
21       Q.  Hopefully I don't take up too much more of
22  your time, Ms. Marquez.
23            You previously testified that the first
24  time you reported Mr. Jorge Trejo's harassment towards
16:40:57 25  you was October 20th, 2018, correct?

Maria Marquez - March 2, 2022

1    A.  Yes, I did not report that earlier because
2 Jorge was more important than me at the job, and I was
16:41:56 3 afraid of losing my job, afraid of retaliation.  And
4 anyway they didn't do anything even when I reported
5 that Jorge had his direct penis behind me.  Even so
6 they didn't do anything.
7              MS. PIERRE-LOUIS:  Objection to the
8 nonresponsive portions of that response.
9         Q.  (BY MS. PIERRE-LOUIS)  Secondly, while you
10 were speaking with your attorney, you stated that Jose
16:42:25 11 was going to report what you said to Jorge; is that
12 correct?
13         A.  Yes, he told me that he was going to talk to
14 Jorge.
16:42:57 15              MS. PIERRE-LOUIS:  Pass the witness.
16                        EXAMINATION
17 BY MS. GIBSON:
18         Q.  Short followup.  October 20 was the first
19 time you reported to people higher up than Jorge,
20 right?
16:43:33 21         A.  Yes, I reported it to the general manager, to
22 Jose Palacios.
23         Q.  But before you did that, the first manager
24 you reported to was Jorge himself, right?
25              MS. PIERRE-LOUIS:  Objection, form.

Maria Marquez - March 2, 2022

16:44:25  1        A.  I -- well, he was the manager of the area I
16:44:28  2  was working at.  He was the manager of my area.  So I
          3  told him that what he was doing was not okay and to
          4  stay away from me.  I told him what he was doing was
          5  not okay and tried to keep him as far as way as
          6  possible from me.  I told him not to touch me.  I told
16:45:00  7  him to stay away from me and he never got it and he
          8  continued doing it.
          9            MS. GIBSON:  All right.  Subject to
         10  possible followup if there are additional questions,
         11  we'll reserve the remainder of our questions for
         12  trial.
         13            MS. PIERRE-LOUIS:  We'll reserve the rest
16:45:25 14  of our questions as well.
         15            THE INTERPRETER:  The interpreter just
         16  would like to correct herself on something that she
         17  always mentioned or mentioned several times.  When she
         18  said with no brains, a person with no brains, the
         19  right expression for that would be with no qualms.
         20            THE REPORTER:  With what?
         21            THE INTERPRETER:  Qualms, Q-U-A-L-M-E-S
         22  (sic).  So I would like to have that changed.  Thank
16:45:54 23  you.
         24            MS. GIBSON:  Thank you, everybody.  Thank
         25  you, Maria.

Maria Marquez - March 2, 2022

1          THE REPORTER:  So I'm going to send the
2  read and sign to you, Ms. Gibson?
3          MS. GIBSON:  Actually, I'll have you send
4  it to Equal Justice Center because I can't translate
5  anything.  So I'll have you send it to Shana Khader.
6          (Recess 4:45 to 4:47.)
7          MS. GIBSON:  Okay.  The parties are going
8  back on the record to clarify something about an
9  individual called Raquel and Rachel.  The Spanish name
10  is Raquel with a Q in it.  The English translation is
11  Rachel, but both Rachel and Raquel are the same
12  person.  Is that correct, Kristina?
13          MS. PIERRE-LOUIS:  That's correct.
14          MS. GIBSON:  Is that correct, Ms.
15  Ramirez, our interpreter?
16          THE INTERPRETER:  Yes, I agree with that.
17          (Deposition concluded at 4:48 p.m.)
18
19
20
21
22
23
24
25

Maria Marquez - March 2, 2022

```
1   STATE  OF  TEXAS )
2   COUNTY OF DALLAS )
3          I, Audra B. Paty, Certified Shorthand
4   Reporter, in and for the State of Texas, certify that
5   the foregoing deposition of MARIA MARQUEZ was reported
6   stenographically by me at the time and place
7   indicated, said witness having been placed under oath
8   by me; that review was requested pursuant to Federal
9   Rule of Civil Procedure 30(e)(1); and that the
10  deposition is a true record of the testimony given by
11  the witness.
12         I further certify that I am neither counsel
13  for nor related to any party in this cause and am not
14  financially interested in its outcome.
15         Given under my hand on this the 22n  day
16  March, 2022.
17
                   Audra B. Paty
18                 Audra B. Paty, Certified
                   Shorthand Reporter No. 5987
                   Dickman Davenport, Inc.
19                 Firm Registration #312
                   4228 North Central Expressway
20                 Suite 101
                   Dallas, Texas 75206
21                 214.855.5100    800.445.9548
                   e-mail:  abp@dickmandavenport.com
22                 My commission expires 10-31-22
23
    Time used by each party:
24  MS. PIERRE-LOUIS: 3:34
    MS. GIBSON: 1:00
25
```

# Exhibit 4

# Certified Translation of Jorge Trejo Statement Submitted to EEOC



*Certified Translation Services, Worldwide Apostille Services*
Main Office: Southeast Spanish, Inc., 11409 Municipal Center Dr., Box 23002, Knoxville, TN 37933
Oklahoma City: 405-301-8861, Houston: 832-303-9004, Amarillo: 806-223-2734, Fax: 877-470-1177
**American Translators Association [ATA] Member Number: 264123, expires January 2025**
www.SeSpanish.com

October 23, 2022

To whom it may concern:

RE: Certification of Translation of the following document:

- Letter/Affidavit written in Spanish – Stamped and Signed

### Translator's Declaration

I, Daniel N. Hickman, declare that I understand the Spanish language and the English language; that I hold advanced degrees from the University of Tennessee and Georgetown University in Modern Foreign Languages, and that I am a professional translator; and that, to the best of my knowledge and belief, the statements in the English language in the attached translation, which I have stamped and signed (Translated/Verified by Southeast Spanish, Inc.), have the same meanings as the statements in the Spanish language in the scanned and included document(s), which I have examined, stamped and signed.

According to the United States Citizenship and Immigration Services (USCIS) and the Department of Homeland Security (DHS), the preceding translation statement certifies the above referenced document. For more information, please see the following site: www.uscis.gov.

This document has not been translated by a family member, friend or business associate.

**Translation Certification Statement**

This translation was verified by the following individual:

Daniel N. Hickman, Ph.D. (on behalf of Southeast Spanish, Inc.)

_____     October 23, 2022
[Signature]                                                          [Date]

Copyright © 2007—2022 Southeast Spanish, Inc.

Appendix 104

I, Jorge Alberto Trejo,

Hereby state that I worked as a supervisor of Ms. Maria Marquez from October 1, 2018

until October 20, 2018, which was the last day that she worked with me. It was a work

relationship. Everything that I ever said to her was about work.

I had many conflicts related to work with her. When I would give her an order to tell her

how to do something, she would verbally insult me. She never liked me to give her orders.


I never had anything to do with her. I never said anything to her about things other than

work. I am not guilty of the accusations she is making. I never touched her.

And the last day that she worked with me was October 20, 2018. She was annoyed

because I gave her an order and she insulted me and so I made the decision to send her

home on October 20, 2018.



[Signature]

seSpanish.com
Southeast
Spanish, Inc.
ATA # 264123
Translated/Verified by:
Dan Hickman, PhD
877-374-0095

Appendix 105

Yo Jorge Alberto Trejo ago contar que trabaje como supervisor de la señora maria marquez de octubre 1st-18 asta octubre 20th que fue el ultimo dia que ella dejo de trabajar con migo

Todo fue una relacion respecto al trabajo Todo lo que se le desía a ella era sobre al trabajo

Tube mucho conflictos respecto al trabajo con ella cuando le dava una orden o disirle como aser las cosas ella me insultaba verval mete nunca queria que le diera ordenes.

nunca tube que ver nada relacionada mente con ella nunca le dije cosas que fueran fuera de lo del trabajo no sos curpable de las acusaciones que ella esta asiendo nunca la toque

Y el ultimo dia de que ella trabajo con migo fue octubre 20th 2018 se molesto por que le di una orden y me insulto y tome la decición de mandarla para la casa oct 20 2018

☑ Jorge A. Trejo

sespanish.com
Southeast
Spanish, Inc.
ATA # 264123
Translated/Verified by:
Dan Hickman, PhD
877-374-0095

**ELDORADO 000056**

Appendix 106

# Exhibit 5

# Car Wash Zone's First Amended Objections and Answers to Interrogatories

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARIA MARQUEZ, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-01847-C |
| | § | |
| ELDORADO CW INVESTMENTS, LTD. | § | |
| d/b/a THE CAR WASH ZONE, and | § | |
| ECWI, LLC, | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT ELDORADO CW INVESTMENTS, LTD. D/B/A/ THE CAR WASH
ZONE'S FIRST AMENDED OBJECTIONS AND ANSWERS TO PLAINTIFF'S
<u>FIRST SET OF INTERROGATORIES</u>**

TO:   Plaintiff, by and through her attorneys of record, Amy E. Gibson, David L. Wiley, GIBSON
WILEY PLLC, 1500 Jackson Street #109, Dallas, Texas 75201-4923; Shana Hope Khader,
EQUAL JUSTICE CENTER, 1250 West Mockingbird Lane, Suite 455, Dallas, Texas 75247;
and to Caitlin Boehne, EQUAL JUSTICE CENTER, 314 East Highland Mall Boulevard, Suite
401, Austin, Texas 78752.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Eldorado CW

Investments, Ltd. d/b/a The Car Wash Zone ("Eldorado") hereby serves its first amended

objections, answers, and responses to Plaintiff Maria Marquez's ("Plaintiff") First Set of

Interrogatories. Eldorado's objections, answers, and responses are attached.

---

**DEFENDANT ELDORADO CW INVESTMENTS, LTD. D/B/A THE CAR WASH
ZONE'S FIRST AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES**                            Page 1

Appendix 108

Dated: October 3, 2022                    Respectfully submitted,

                                          By: */s/ John H. Yoon*
                                                Ryan K. McComber
                                                Texas Bar No. 24041428
                                                ryan.mccomber@figdav.com
                                                John H. Yoon
                                                Texas Bar No. 24125958
                                                john.yoon@figdav.com

                                          **FIGARI + DAVENPORT, LLP**
                                          901 Main Street, Suite 3400
                                          Dallas, Texas 75202
                                          (214) 939-2000
                                          (214) 939-2090 – fax

                                          ATTORNEYS FOR DEFENDANTS


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 3, 2022, a true and correct copy of this document has been served via electronic mail on the following:

Amy E. Gibson
amy@gwfirm.com
David L. Wiley
david@gwfirm.com
GIBSON WILEY PLLC
1500 Jackson Street #109
Dallas, Texas 75201-4923

Shana Hope Khader
skhader@equaljusticecenter.org
EQUAL JUSTICE CENTER
1250 West Mockingbird Lane, Suite 455
Dallas, Texas 75247

Caitlin Boehne
cboehne@equaljusticecenter.org
EQUAL JUSTICE CENTER
314 East Highland Mall Boulevard, Suite 401
Austin, Texas 78752

                                          */s/ John H. Yoon*
                                          John H. Yoon

---

**DEFENDANT ELDORADO CW INVESTMENTS, LTD. D/B/A THE CAR WASH
ZONE'S FIRST AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES**                                    Page 2

## ANSWERS TO INTERROGATORIES

**INTERROGATORY 1:**

Identify the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that you may use to support your claims or defenses.

**ANSWER:** Eldorado objects to this Interrogatory as being overly broad and vague, and on the grounds that it seeks the addresses and telephone numbers of Eldorado's employees and former employees, which may only be contacted through Eldorado's counsel. Eldorado generally states:

1.    Edward Arshouk
      c/o FIGARI + DAVENPORT, LLP
      901 Main Street, Suite 3400
      Dallas, Texas 75202
      214.939.2000

Edward Arshouk has knowledge regarding Eldorado's claims and defenses asserted in this lawsuit.

2.    Maria Marquez
      c/o GIBSON WILEY PLLC
      1500 Jackson Street #109
      Dallas, Texas 75201
      213.522.2121

Maria Marquez as the plaintiff in this case presumably has knowledge of her claims asserted in this lawsuit.

3.    Jose Palacios
      2420 Keyhole Street
      Irving, Texas 75062

Jose Palacios was Eldorado's employee at the time of the claims at issue and has knowledge of the allegations in this lawsuit.

4.    Jorge Trejo
      1400 Noel Road, Apt. 1116
      Dallas, Texas 75240

Jorge Trejo was Eldorado's employee at the time of the claims at issue and has knowledge of the allegations in this lawsuit.

**INTERROGATORY 2:**

Identify all persons you expect to call to testify at trial. This interrogatory includes rebuttal and impeachment witnesses whose testimony may be reasonably anticipated before trial.

**DEFENDANT ELDORADO CW INVESTMENTS, LTD. D/B/A THE CAR WASH
ZONE'S FIRST AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES**                                    Page 3

Appendix 110

**ANSWER:** Eldorado objects to this Interrogatory as being premature and requesting an improper marshalling of evidence. Subject to the foregoing, Eldorado will identify its witnesses pursuant to the deadlines established by the Court and/or the Federal Rules of Civil Procedure. Eldorado generally states: Edward Arshouk, Maria Marquez, Jose Palacios, and Jorge Trejo.

**INTERROGATORY 2[sic]:**
Identify all consulting experts whose mental impressions or opinions have been reviewed by a testifying expert.

**ANSWER:** None.

**INTERROGATORY 3:**
Did Maria properly state your correct legal name in the lawsuit? If the answer is no, state your correct legal name.

**ANSWER:** Eldorado has been properly named in this lawsuit but denies all liability.

**INTERROGATORY 4:**
Without regard to whether you contend liability exists in the lawsuit against any defendant or potential defendant, do you contend that you are a proper defendant in the lawsuit? If not, describe the legal and factual basis for your contention and identify each person you contend is or may be a proper defendant in the lawsuit.

**ANSWER:** *See* Answer to Interrogatory No. 3.

**INTERROGATORY 5:**
For each person you or Maria has identified in the lawsuit in interrogatory answers, or pleadings identifying fact witnesses, state:

a. for a natural person, the person's last known (i) home address, (ii) home telephone number, (iii) personal mobile phone number, (iv) personal email address, and (v) employer;
b. for an entity, the entity's last known (i) business address, (ii) business telephone number, and (iii) business facsimile number. This interrogatory excludes attorneys of record in this lawsuit.

**ANSWER:** Eldorado objects to this Interrogatory as being overly broad and vague, and on the grounds that it seeks the addresses and telephone numbers of Eldorado's employees or former employees, which may only be contacted through Eldorado's counsel. However, to the extent that Eldorado cannot secure their attendance at trial or any requested deposition, Eldorado agrees to provide last known contact information for same.  Eldorado generally states:

1.      Edward Arshouk
        c/o FIGARI + DAVENPORT, LLP
        901 Main Street, Suite 3400
        Dallas, Texas 75202
        214.939.2000

DEFENDANT ELDORADO CW INVESTMENTS, LTD. D/B/A THE CAR WASH
ZONE'S FIRST AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES                                    Page 4

Appendix 111

2.      Maria Marquez
        c/o GIBSON WILEY PLLC
        1500 Jackson Street #109
        Dallas, Texas 75201
        213.522.2121

3.      Jose Palacios
        2420 Keyhole Street
        Irving, Texas 75062

4.      Jorge Trejo
        1400 Noel Road, Apt. 1116
        Dallas, Texas 75240

**INTERROGATORY 6:**

Identify each person who participated or was interviewed in your investigation of Maria's allegations that she was sexually harassed while working for you and briefly state the nature of each such person's participation.

**ANSWER:** Eldorado generally states that it spoke with and/or interviewed the following individuals in connection with Plaintiff's allegations in 2018: Plaintiff; Jose Palacios; and Jorge Trejo.

**INTERROGATORY 7:**

Identify each person who worked for you and reported one or more of the following:

a. workplace sexual harassment
b. workplace retaliation.

**ANSWER:** Other than Plaintiff, no one.

**INTERROGATORY 8:**

Identify each person you believed to be female that you employed anytime during the period from January 1, 2017 to the time of trial of this lawsuit.

**ANSWER:** Eldorado objects to this Interrogatory on the basis that it seeks confidential information and/or would improperly infringe upon the privacy rights of Eldorado's former employees and unnecessarily publicize private facts concerning them. Eldorado further objects to this Interrogatory as neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Eldorado further objects that it is over broad and unduly burdensome. Eldorado generally states that Plaintiff identified Raquel Rodriguez as a female employee she worked with in her deposition, and her last known contact information is: 14000 Noel Rd., #1116, Dallas, TX  75240.

---

**DEFENDANT ELDORADO CW INVESTMENTS, LTD. D/B/A THE CAR WASH
ZONE'S FIRST AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES**                                    Page 5

**INTERROGATORY 9:**
Identify each person who participated or was interviewed in your investigation into any allegation that Maria screamed profanities while working for you and briefly state the nature of each such person's participation.

**ANSWER:** Eldorado generally states that it spoke with and/or interviewed the following individuals in connection with Plaintiff's allegations in 2018: Plaintiff; Jose Palacios; and Jorge Trejo. *See also* Eldorado's Answer to Interrogatory No. 6.

**INTERROGATORY 10:**
Identify each person who you employed at any time during which you also employed either Maria or Jorge Trejo or both — include in that identification the person's date of hire, date of termination, and job title each held with you.

**ANSWER:** Eldorado objects to this Interrogatory on the basis that it seeks confidential information and/or would improperly infringe upon the privacy rights of Eldorado's former employees and unnecessarily publicize private facts concerning them. Eldorado further objects to this Interrogatory as neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Eldorado further objects that it is over broad and unduly burdensome.

**INTERROGATORY 11:**
Describe any security or surveillance video recording you did at 6501 Eldorado Parkway in McKinney, Texas at any time during which you employed Maria and include in that description the number of cameras used, their general placement around the premises, what areas each was generally intended to view and record, your efforts to preserve and collect such recordings and for any recordings since destroyed explain when and why it was destroyed.

**ANSWER:** None.

DEFENDANT ELDORADO CW INVESTMENTS, LTD. D/B/A THE CAR WASH
ZONE'S FIRST AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES                                   Page 6

Appendix 113

# Exhibit 6

# Declaration of Amy Gibson

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Maria Marquez, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-01847-C |
| | § | |
| Eldorado CW Investments, Ltd. | § | |
| d/b/a The Car Wash Zone, and | § | JURY DEMAND |
| ECWI, LLC, | § | |
| | § | |
| *Defendants.* | § | |

**DECLARATION OF AMY GIBSON**

1.    My name is Amy Elizabeth Gibson. The facts and statements that I make in this declaration are true and accurate. Unless otherwise stated or apparent from my testimony, I have personal knowledge of the facts and statements that I make in this declaration. I do not intend to waive any privilege in making this declaration.

2.    I am one of the attorneys who represents Plaintiff Maria Marquez in this lawsuit. I personally worked with different translators to listen to Maria's story and facts that are included in her declaration.

3.    After using different translators, I also personally used my iPhone to send and receive text messages with Maria that were translated between English and Spanish. My English texts apparently came to her in Spanish because she could understand what I sent to her via text, and her Spanish texts came to me in English. That iPhone process was used to translate each piece of the declaration to her — so she could take her time reading each paragraph, make corrections, add information, and verify the final before she signed it.

**My name is Amy Elizabeth. My date of birth is December 7, 1968. I declare under penalty of perjury that my testimony above is true and correct.**

Executed in Dallas County, Texas on October 31, 2022.

_____
Amy Gibson